**UNITED STATES of America,**
**Plaintiff,**

v.

**Joseph Andrew BOVA, Defendant.**

**No. 68–CR–49.**

United States District Court
E. D. Wisconsin.

June 10, 1969.

James B. Brennan, U. S. Atty., Milwaukee, Wis., by Thomas E. Weil, Asst. U. S. Atty., and Lt. Colonel James E. McDonald, Jr., Field Attorney, Selective Service System, Madison, Wis., for plaintiff.

Harry F. Peck, Jr., Milwaukee, Wis., for defendant.

## OPINION AND ORDER

REYNOLDS, District Judge.

The defendant, Joseph Andrew Bova, is charged with willfully and knowingly refusing induction into the Armed Forces of the United States in violation of Title 50 App. of the United States Code § 462. At the conclusion of trial to the court, the defendant moved for a judgment of acquittal on several grounds. In reaching my decision, however, I have found it necessary to consider only one of the defendant's claims, i. e., that he was prejudiced by material misstatements of fact contained in the Justice Department's recommendation to the Appeal Board.[1]

## FINDINGS OF FACT

Defendant has requested that the court make specific findings of fact and conclusions of law pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure. Based on the testimony and exhibits introduced at trial, I find the facts leading up to the defendant's prosecution to be as follows:

On August 22, 1966, defendant received a classification of I–A (registrant available for military service) from Local Board 49, Milwaukee, Wisconsin. On

---

1. The other grounds advanced in support of defendant's motion are that the Appeal Board's classification was without a basis in fact and that the defendant's order to report for induction was invalidly issued.

September 16, 1966, defendant was given a preinduction physical examination and found physically acceptable for service. Subsequent thereto, on October 4, 1966, defendant was ordered to report on October 21, 1966, for induction into the Armed Forces. On October 11, 1966, defendant notified the Local Board by reply postcard that he intended to report for induction as ordered.

On October 13, 1966, however, defendant went to the Local Board and picked up SSS Form 150 which is used by registrants to apply for a conscientious objector classification. Then on October 20, 1966, defendant contacted the Local Board clerk and requested cancellation of his induction order and reclassification as a conscientious objector. By a telephone poll conducted by the Local Board clerk that same day, the Local Board denied the defendant's requests.

The following day, October 21, 1966, defendant reported to the induction center but refused to submit to induction. Instead, he filed his completed conscientious objector form (SSS Form 150) with the Local Board. The Local Board declined to take any further action, however, until it received a request from the State Director of the Selective Service System asking the Local Board to reopen the defendant's classification. The Local Board then considered the defendant's conscientious objector claim on December 12, 1966, but decided to continue his I–A classification.

On January 18, 1967, after the statutory time for requesting a personal appearance or filing an appeal from the Local Board's decision had expired, defendant appeared before the Local Board. He stated that if he had known that the Local Board's December 12, 1966, decision to continue his I–A classification had constituted a reopening of his classification, he would have made a timely appeal from that decision. The Local Board declined to reopen the defendant's classification again but did consent to send him another SSS Form 110 so as to afford him another opportunity to appeal the Local Board's decision of December 12, 1966. An SSS Form 110 was sent to the defendant the following day.

On January 26, 1967, defendant filed his notice of appeal with the Local Board. On February 8, 1967, the Appeal Board reviewed defendant's file. The Appeal Board tentatively determined that the defendant should not be classified as a conscientious objector, and in accordance with the then-existing procedures, § 6(j) of the Universal Military Training Act and § 1626.25 of the Selective Service Regulations, the Appeal Board forwarded the defendant's file to the Justice Department for its investigation and recommendation.

The Justice Department, in turn, requested a Federal Bureau of Investigation (hereinafter "F.B.I.") inquiry. Upon receipt of the results of this inquiry, the Justice Department prepared a résumé of the F.B.I.'s findings. A copy of this résumé along with notice of a hearing to be held before an officer of the Justice Department were then sent to the defendant.

On June 29, 1967, a hearing was held before Mr. Charles W. Foran, a Justice Department hearing officer. Defendant appeared personally along with four witnesses who testified on his behalf. Mr. Foran's subsequent report states:

"Registrant * * * was *a religious* for a time, attending Marynook in 1960 and 1961, and St. Mary's College in 1961 and 1962. He has displayed an interest in civil rights movements, participating in public demonstrations, such as protest marches and sit-ins. * * * Born and raised a Roman Catholic, he does not practice his religion in the prescribed form or manner; in fact, he has very definite opinions as to how the services of the church should be performed and how he thinks he should worship. His claim for exemption appears to be based upon his own religious beliefs and not upon adherence to Roman Catholicism or any other religion. * * * The registrant spoke of his objection to war and to killing, and quoted the Bible as his authority for opposition to war.

The registrant impressed me as being sincere in *his* belief that he was a Conscientious-Objector, but I was not convinced that he knew precisely what a Conscientious-Objector was or why he should be entitled to an exemption from the draft." (Emphasis under "a religious" added.)

Based upon the above and other findings, Mr. Foran's report concluded that:

"1. The registrant has a reputation for expressing his opinions openly * * *. Nowhere in the résumé does it appear that the registrant expressed any opinion that he was a Conscientious-Objector until October of 1966. It is impossible to believe that his objection to war in any form would not have been expressed by him prior to that time, in view of his many other open expressions on a variety of topics. * * *

* * * * * *

"4. Registrant made no claim of Conscientious-Objection until his student deferment had been withdrawn, which deferment he had had for three years. This fact standing alone I deem sufficient to conclude that his claim is not genuine. It cannot be accepted that all of a sudden his vague sentiments crystallized and his belief ripened, especially since the registrant's adult life is characterized by strong and open opinions on many subjects kindred to Conscientious-Objection; his opportunity to express such an opinion prior to October 1966; and the fact that his student deferment had been withdrawn."

Mr. Foran's report recommended "that the appeal of the registrant * * * be not sustained, because there is no finding that the registrant's Conscientious-Objections are based upon religious training and belief, and because the registrant's claim is not made in good faith."

Defendant did not receive a copy of Mr. Foran's report. Based on the results of the F.B.I. inquiry and Mr. Foran's report, the chief of the Justice Department's conscientious objector section,

Mr. T. Oscar Smith, prepared and submitted to the Appeal Board a recommendation on behalf of the Justice Department. This recommendation stated in part:

"The Hearing Officer reported that the registrant was born and reared as a Roman Catholic and was religious for a time, attending Marynook and St. Mary's but thereafter became interested in civil rights movements, participating in public demonstrations such as protest marches and sit-ins * *. The Hearing Officer reported that the registrant's witnesses attested to the registrant's sincerity, courage, desire for justice, peace, equality and the dignity of man. The Hearing Officer reported that the registrant's claim for exemption appeared to be based not upon adherence to Roman Catholicism but that he appeared to be sincere in his own belief that he is a conscientious objector although he appeared not to know precisely what a conscientious objector is or why he should be entitled to that exemption. The Hearing Officer found that nowhere in the Résumé does it appear that the registrant expressed any opinion that he was a conscientious objector until October, 1966 and that one witness who had known the registrant for six or seven years never heard him mention his conscientious objection. The Hearing Officer found that the registrant did not claim conscientious objection until after his student deferment had been withdrawn in October, 1966. The Hearing Officer could not accept that all of a sudden the registrant's vague sentiments crystallized and ripened into a conscientious objector claim. He concluded that the registrant's conscientious objections are not based on religious training and belief and that his claim is not made in good faith. He recommended that the * * * claim be not sustained."

This Justice Department recommendation concluded that the "registrant has failed to discharge his burden of proving his conscientious-objector claim and

[the Justice Department] recommends * * * that he be not .classified in Class I–O or in Class I–A–O."

The Appeal Board furnished the defendant with copies of the Justice Department's recommendation and the F.B.I. résumé—affording him thirty days in which to submit written information in rebuttal of the Justice Department's recommendation. Defendant filed his reply with the Appeal Board on October 30, 1967. In general, the reply raises what the defendant considered to be discrepancies between the facts of his situation and the findings of the Justice Department as contained in its formal recommendation.

On November 29, 1967, the Appeal Board classified defendant I–A; on December 13, 1967, the clerk of the Local Board, acting pursuant to the standard operating procedures of the Local Board, ordered defendant to report for induction on January 5, 1968; he refused, and the matter was turned over to the United States Attorney for prosecution.

## CONCLUSIONS OF LAW

The scope of judicial review in cases of this nature is extremely narrow, but lack of fundamental fairness in the classification procedure is a denial of due process for which relief will be granted. Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 96 L.Ed. 1417 (1953). Fundamental fairness, at the very least, requires that a registrant's classification be determined on the basis of fact. To require less would be to permit error to beget error. In classifying the defendant I–A, the Appeal Board had before it the defendant's cover sheet, the decision of the Local Board, the recommendation of the Justice Department, the Justice Department's résumé of the F.B.I. inquiry, and the defendant's statements in rebuttal of both the Justice Department's recommendation and the Justice Department's résumé of the F.B.I. inquiry. The record clearly indicates that the Hearing Officer's re-

port, as such, was not before the Appeal Board.

It is impossible for this court to determine upon which of these sources of information the Appeal Board chose to rely. However, if any one of them contains material misstatements of fact, the court must assume that the Appeal Board relied on that source, and under such circumstances, the Appeal Board's determination would be unfair and the defendant entitled to judgment of acquittal.

Based on the findings of fact, I conclude that the Justice Department's recommendation misstated what the Hearing Officer had reported. The Justice Department's recommendation indicates that the Hearing Officer had found that the defendant "was born and reared as a Roman Catholic and was religious for a time, attending Marynook and St. Mary's but thereafter became interested in civil rights movements, * * *." From this statement one could only conclude that the Hearing Officer had reported that although the defendant had at one time in his life been a religious person, he no longer was a religious man; that in fact he had abandoned his religion for "civil rights movements." Such a conclusion is clearly contrary to the import of the Hearing Officer's report.

The Hearing Officer reported that the defendant was "a religious for a time." In so doing the Hearing Officer was indicating that the defendant had attended Catholic seminaries from 1960 to 1962. Such a finding is in no way necessarily inconsistent with the Hearing Officer's further finding that the defendant was interested in "civil rights movements." Nor does the Hearing Officer's report imply that the defendant ceased to be a person of religious beliefs when he left the seminary in 1962. On the contrary, the Hearing Officer found that although the defendant was not practicing Catholicism in the prescribed form at the time of the hearing, he nevertheless did possess his own religious beliefs as well as very definite opinions as to how the practice of Catholicism should be re-

formed. Thus it appears clear to me that the Justice Department misstated the findings of the Hearing Officer in its recommendation to the Appeal Board.

Having found that there was a variance between the facts found by the Hearing Officer and the Justice Department's résumé of these facts as contained in its recommendation to the Appeal Board, it now becomes necessary to determine whether this variance materially prejudiced the defendant.

■ The variance concerns the defendant's religious beliefs. Since it is these very beliefs that form the basis for the defendant's conscientious objector claim as well as the Appeal Board's determination, the erroneous view of the defendant's religious beliefs that is conveyed by the Justice Department recommendation is by its very nature material. Moreover, the Appeal Board was certainly aware that the Hearing Officer had conducted a full hearing at which the defendant and his witnesses were present, and, therefore, it is probable that the Appeal Board accorded significant weight to the Hearing Officer's report *as contained in* the Justice Department's recommendation. The Justice Department even urged the Appeal Board to give such weight to the Hearing Officer's determination (as contained in the Justice Department's recommendation), indicating that such a directive comes from the courts themselves by citing White v. United States, 215 F.2d 782 (9th Cir. 1954). It is my conclusion, therefore, that the variance contained in the Justice Department recommendation was material, and furthermore that it resulted in a lack of fundamental fairness with respect to the consideration accorded the defendant by the Appeal Board.

In reaching this conclusion, I am aware that the defendant's reply to the Appeal Board on October 30, 1967, takes issue with the accuracy of the facts as contained in the Justice Department's résumé of the Hearing Officer's report,

and that this reply was before the Appeal Board at the time of its determination. It is my opinion, however, that this reply cannot be said to constitute an effective rebuttal sufficient to cure the initial misstatement of fact.

More specifically, the defendant took issue with the Justice Department's statement that defendant "was religious for a time * * * but thereafter became interested in civil rights movements * * *." Defendant contended that there is no inconsistency between a religious person and a person who participates in civil rights activities; that in fact the latter activities are often "a normal and natural expression" of one's religious convictions. The Hearing Officer's report, however, was not available to the defendant,[2] and therefore he was unable to substantiate his claim that the facts as contained in the Justice Department's recommendation were inaccurate. As such, his claim was but a self-serving statement. The Appeal Board was likewise without a copy of the Hearing Officer's report and, therefore, not in a position to verify the defendant's claims.

■ Having found that one of the sources of information before the Appeal Board at the time of its determination (the Justice Department's recommendation) contained a material misrepresentation of fact, the court holds that the Appeal Board's consideration of defendant's proper classification amounted to a denial of procedural due process, and, therefore, defendant is entitled to judgment of acquittal. In so ruling, the court is of the opinion that its decision is in accord with the reasoning in Manke v. United States, 259 F.2d 518 (4th Cir. 1958), although the court recognizes that there are numerous differences between the record in that case and the facts of the present prosecution.

■ The findings of fact also reveal that the recommendations of both the Hearing Officer and the Justice Department were based on a criteria for

2. This is not to imply that the defendant was entitled to a copy of the Hearing Officer's report. The court only desires to place in perspective the ability of the defendant to effectively rebut the Justice Department's misstatement of the facts.

conscientious objector classification that is contrary to the standard established by the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The fact that the defendant may have departed from what the Hearing Officer viewed as traditional Roman Catholicism, and instead adopted a personal set of religious beliefs and values, does not necessarily lead to the conclusion that his claim for conscientious objector classification is not based on religious training and belief or not made in good faith. Rather, as set out in *Seeger*, supra, the correct test is whether "the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious."

For the foregoing reasons, I am of the opinion that the defendant, Joseph Andrew Bova, is entitled to a judgment of acquittal.

The foregoing opinion sets forth this court's findings of fact and conclusions of law in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.