413 F.2d 936
 UNITED STATES of America ex rel. Harris TOBIAS, Appellant,
v.
Melvin LAIRD, Secretary of Defense, Stanley R. Resor, Secretary of the Army, and the Commanding Officer of Fort Eustis, Virginia, Appellees.
 No. 13559.
 United States Court of Appeals Fourth Circuit.
 Argued June 11, 1969.
 Decided July 25, 1969.
 
 Joan Goldberg, New York City (Rabinowitz, Boudin & Standard, New York City, on the brief), for appellant.
 Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on the brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.
 CRAVEN, Circuit Judge:
 
 
 1
 This is an appeal from a denial by the district judge of a petition for writ of habeas corpus brought to procure Harris Tobias' discharge from the Army or, alternatively, assignment to non-combatant duties, on the theory that he is in custody in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c) (3). Tobias claims to have been arbitrarily and capriciously denied conscientious objector status under 50 U.S.C. App. § 456(j). It is urged that in denial of due process the Army has refused him such status although he is clearly entitled to it under Army and Defense Department regulations. Department of Defense Directive 1300.6; Army Regulation 635-20.[1] We agree and reverse the decision of the district court.
 
 
 2
 The Army's refusal to release or otherwise grant Tobias relief must be measured against the congressional formulation of policy contained in 50 U.S.C. App. § 456(j):
 
 
 3
 "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term `religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."
 
 
 4
 The Department of Defense and the United States Army have adopted a regulatory scheme generously designed to protect soldiers who, after enlistment, find war morally repugnant and impossible to square with religious principle. The Department of Defense has recognized the "national policy" as one in which Congress has "deemed it more essential to respect a man's religious beliefs than to force him to serve in the armed forces." Par. IV(a) DoD § 1300.6. The Department of Defense Directive contains the following, which all but decides this case before us:
 
 
 5
 "Evaluation of the sincerity of a claim of conscientious objection requires objective consideration of professed belief not generally shared by persons in the military service. For that reason, particular care must be exercised not to deny bona fide convictions solely on the basis that the professed belief is incompatible with one's own." Par. V(c) DoD 1300.6.
 
 
 6
 Pursuant to its regulatory scheme, Tobias was interviewed and examined by three Army officers — a psychiatrist, a chaplain[2] and an officer "knowledgeable in policies and procedures relating to conscientious objector matters." DoD § 1300.6, Par. VI(b) (4). All three officers making recommendations recommended classification as a conscientious objector.[3] Despite the unanimous opinion of the three officers charged with the responsibility of determining Tobias' sincerity and the nature of his religious beliefs, Commanding Officer Forcier forwarded the reports of the officers with a recommendation that the application be denied. Captain Forcier recommended denial without having interviewed or talked with the applicant. The captain expressed some fear that Tobias' application might represent merely "disenchantment with present American military commitments," and also expressed the belief that "current levies for Vietnam on personnel in this unit have acted as a catalyst in this case, and that there lies the basic stimulus for submission of SP 4 Tobias' request for discharge." Subsequent to his decision to reject the reports of the three officers and to deny relief, Captain Forcier, after protest, did interview Tobias and somewhat inconsistently reported: "There was little doubt of his sincerity before I interviewed him and there is little doubt of his sincerity now." But the captain adhered to his prior refusal to recommend discharge, and failed to recommend assignment to non-combatant duty.
 
 
 7
 Subsequent officers routinely noted their disapproval of the application after examination of the papers and without seeing or interviewing Tobias. The application was then forwarded through channels to the Department of the Army. By letter dated February 20, 1969, the application was disapproved. The comment thereon is: "Evidence does not show conscientious objection to participation in war in any form, but rather supports only a claim for classification as a non-combatant." (Emphasis added.) After having been notified that his application was denied, Tobias then applied for reassignment to non-combatant service under the appropriate regulation, AR 600-200, 2-12. In the processing of this application, Tobias was again interviewed by Rabbi Allan Mervis and by another officer (Major Oliver) familiar with conscientious objector matters and procedures. The rabbi again stated his opinion that Tobias' views were religious and again recommended that he be given assignment not in conflict with his religious belief. Major Oliver came to the same conclusion as had Major Crawford, and recommended that Tobias be reassigned to non-combatant duties, stating:
 
 
 8
 "From the contents of the application and the informal discussion which follow [sic] the above explanation I recommend that Specialist Tobias be classified I-A-O and that he perform duties consistent with AR 600-200.
 
 
 9
 "Specialist Tobias is an extremely mild-mannered individual but capable of standing behind his convictions. He appears to be completely honest and sincere in his beliefs and convictions."
 
 
 10
 Despite the unanimous opinion of all four Army officers who had examined and interviewed him (excluding Forcier, who had decided against Tobias before he ever saw him) that he should be granted some form of relief — whether discharge from the service or non-combatant assignment — Tobias' latest application for non-combatant service was denied, and on April 7, 1969, he was advised that he was scheduled for combat training and for assignment to Vietnam. This petition for writ of habeas corpus followed.
 
 
 11
 We reject the defendant's contention that Tobias is barred from relief by failure to exhaust administrative remedies. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir., March 20, 1969 [petition for rehearing denied, 412 F.2d 1137 June 25, 1969]). Moreover, although exhaustion of administrative remedies is ordinarily to be encouraged, and, indeed, insisted upon, the doctrine is one of comity and not power. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). In the extreme factual context of this case we think the district judge correctly reached the merits and in his discretion should have done so even if further administrative avenues appeared theoretically open.
 
 
 12
 According to the record Tobias is a young man who was taught from infancy an absolute reverence for all forms of life and abhorrence of violence. Even as a boy, he never engaged in a fist fight, and never went fishing or hunting. Although Judaism forms the basis of his beliefs, he is now heretical with respect to Jewish ritual and form and has come to believe in an over-whelming reverence for life and a faith in a supreme being as the core of his religious conviction. Tobias does not believe in the use of force under any circumstances and says with apparent sincerity that he could no more "follow an order that would contribute to the death of another human being" than he could cease to be himself. He says, "I will not be the instrument for the destruction of life."
 
 
 13
 His history is entirely consistent with this expression of belief. As long as nine years ago he wrote anti-war poetry for a Wilkes College literary magazine and for the college newspaper. After graduating from college he became a community development worker in a small village in Guatemala as a member of the Peace Corps. He says that in the Peace Corps he found the means to translate his religious belief into positive action and that for him it was an immeasurably rewarding experience. He says that working with the sick, the illiterate and the hungry gave him the greatest sense of fulfillment that he has ever known.
 
 
 14
 Tobias' description of his own viewpoints and religious philosophy is confirmed by those who have known him for many years, one of whom wrote that in 13 years of close association he was unable to recall even one instance where Harris Tobias indulged in violence or life-denying action. Another college classmate expressed the belief that Tobias was incapable of firing a weapon that would destroy another and that his character makes such acts of violence impossible for him. Another friend, not at all in agreement with Tobias' viewpoints, nevertheless attested their sincerity, saying: "If there is such a thing as a `conscientious objector,' it is he." The record also contains the statements of two soldiers serving in the same unit with Tobias attesting to the sincerity of Tobias' religious beliefs and that he has consistently expounded those beliefs within the Army as well as without. Rabbi Leon Spielman of Amityville, New York, attests that in his opinion Tobias "would not bear arms under any circumstances."
 
 
 15
 Major Robert C. Crawford, after interviewing Tobias, accepted his explanation for having enlisted in a reserve unit in 1965 as a volunteer. He explains that Tobias looked upon it as a non-combatant way of satisfying his military obligation and serving his country honorably with every reasonable hope at the time of enlistment that (1) his unit would never be activated, and if it were, (2) that he would probably never be called upon for combatant service. Thus the conflict between religious principle and Army duty did not occur until his unit was activated and called to Fort Eustis, and even then the conflict did not become critical until Tobias faced the reality of receiving combatant training for fighting in Vietnam.
 
 
 16
 Undoubtedly Captain Forcier was correct in his conclusion that the prospect of combat duty in Vietnam acted as a catalyst and was the stimulus for submission of the request for discharge. What Major Crawford grasped and Captain Forcier failed to understand was that Tobias did not envision anymore than did the rest of America the escalation of activity in Vietnam to the status of a major war. It was that escalation that, as he put it, "upset the delicate balance I had achieved between conscience and service."
 
 
 17
 Department of Defense Directive 1300.6, Par. IV(b) (3) seems to treat a request for discharge and a request for assignment to non-combatant duties as related alternative remedies to be granted one who may be a conscientious objector to war.[4] The Adjutant General of the Army, by letter of February 20, 1969, to the Commanding General, Fort Meade, Maryland, disapproved Tobias' request for discharge but noted that the evidence "supports (only) a claim for classification as a non-combatant." Yet, perplexingly, thereafter when Tobias sought the status of a non-combatant it was denied him. To so treat a soldier seems to us entirely inconsistent with the spirit of the Department of Defense and Army regulations, and particularly DoD 1300.6. If a soldier is not entitled to discharge but is entitled to non-combatant assignment, why should the latter be denied him simply because he declared in Trover rather than in Case, i. e., "pleaded" his case administratively with technical imprecision? Perhaps that is not the reason for denial of relief — but we have searched the record in vain for any other. We think the Army's own directives demonstrate a policy of reasonable common sense fairness to its soldiers — which policy has not been followed in this case.
 
 
 18
 From an examination of the entire record we are unable to perceive any basis in fact for the classification of Tobias for combat duty. The sincerity of his religious conviction is beyond all question. Tobias, in the language of the statute, is "conscientiously opposed to participation in war in any form." Beyond a doubt, he is entitled to the status of a conscientious objector. The decision of the district judge to the contrary is clearly erroneous.
 
 
 19
 More perplexing to us is the effect of such status with respect to remedy. Army Regulation 635-20, 3 December, 1968, seems to contemplate a complete separation from the service of one who is in fact a conscientious objector. Department of Defense Directive 1300.6, May 10, 1968, as we said before, seems to contemplate that a conscientious objector may be released from the service or assigned non-combatant duty. Since Tobias was denied the status of conscientious objector, the question of whether he was entitled to discharge or to special assignment was not clearly before the district court and was not fully considered. Undoubtedly for this reason the record is confusing both as to Army policy in such a situation and as to the extent of Tobias' willingness to serve as a non-combatant. In this situation rather than simply ordering the discharge of Tobias, we think it better to remand to the district court with instructions.
 
 
 20
 The judgment of the district court denying the petition for writ of habeas corpus is reversed. On remand the district court will enter an order requiring that the United States Army grant to Harris Tobias the status of conscientious objector and all rights, privileges and immunities that attach to that status under the laws of the United States and the regulations of the Department of Defense and of the Army. The district court will then conduct a further inquiry to determine whether Tobias is entitled to be discharged or whether he is entitled only to be assigned non-combatant service as defined in Paragraph III of Department of Defense Directive 1300.6 and such other regulations as may be pertinent. Pending final determination of the remedy and entry of an appropriate final judgment, the district court will enjoin, if necessary, the issuing of further orders to Tobias to engage in combat duty.
 
 
 21
 Reversed and remanded with instructions.
 
 
 
 Notes:
 
 
 [1]
 It is also urged upon us that the district court's narrow interpretation of 50 U.S.C. App. § 456(j) is invalid as infringing upon the anti-establishment of religion clause of the First Amendment. We find it unnecessary to reach this issueSee United States v. Sisson, 297 F.Supp. 902 (D. C.Mass. April 1, 1969).
 
 
 [2]
 The regulation contemplates examination by one chaplain, but in Tobias' case two actually interviewed him because the first one was not of his faith. Par. VI(b)(8) (c) DoD 1300.6 and Army Regulation 635-20(4) require a statement from a psychiatrist based upon an interview of the applicant. The psychiatrist is not required to comment on the applicant's sincerity or to make any recommendation as to whether conscientious objector status should be granted, but clearly the psychiatrist in his report accepted Tobias' sincerity and recognized his abhorrence of the thought of killing anyone
 
 
 [3]
 The basis for the officers' recommendation of classification as a conscientious objector is indicated by these excerpts from their various reports:
 Chaplain Oscar H. Barrow, Jr. stated:
 "SP Tobias appeared to me to be sincere in his request for his conscientious objector status.
 "It appears to me that SP 4 Tobias' request is based upon his own personal scriptural interpretation and moral beliefs. He is a member of the Jewish faith."
 Rabbi Allan Mervis stated:
 "Judaism teaches us to place the pursuit of peace above all other goals. SP 4 Tobias' aversion to killing and his reverence for life are supported by thousands of years of Jewish tradition and hundreds of references in both scriptures and commentary."
 Major Robert C. Crawford stated:
 "Specialist Tobias is a sincere, intelligent young soldier who exhibits a strong and positive feeling against killing and violence.
 "Specialist Tobias is torn between his moral convictions and his feeling of loyalty and love for his country. He appears to see the necessity for the Army and the role they play in national defense but does not feel that he can participate fully in it. He is very willing to serve in a capacity not requiring the demonstration of violence or self-defense with a weapon at the expense of human life. * * * I recommend that Specialist Tobias be classified as a non-combatant conscientious objector and be utilized in accordance with Paragraph 2-12(2) and/or 3-7, AR 600-200."
 
 
 [4]
 The question is insufficiently briefed, and we do not decide it