**UNITED STATES of America ex rel. Harry James LEHMAN, III, Appellant,**

v.

**Melvin L. LAIRD, Secretary of Defense, John S. Chaffee, Secretary of Navy, and Captain Julian S. Lake, or his successor, Commanding Officer of USS John F. Kennedy (CVA 67), Appellees.**

**No. 14688.**

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1970.

Decided July 31, 1970.

Joan Goldberg, New York City, (Kendall Barnes, Rabinowitz, Boudin & Standard, Leonard B. Boudin, New York City, and Hudgins & Gibson, Richard W. Hudgins, Newport News, Va., on brief), for appellant.

James A. Oast, Jr., Asst. U. S. Atty., for appellees.

Before BOREMAN and BUTZNER, Circuit Judges, and WIDENER, District Judge.

BOREMAN, Circuit Judge.

Harry James Lehman, III, appeals from an order of the district court denying his petition for a writ of habeas corpus in which he asserts entitlement to his discharge from the armed forces under 28 U.S.C. § 2241(c) (1) and (3).[1]

Lehman enlisted in the United States Navy on July 7, 1967. In late May or early June of 1969 he filed an application for discharge as a conscientious objector. In his application he stated:

"I believe that there is only one way to achieve peace, and practicing peace is that way. Guns and bombs and destruction do not bring peace. They bring hate and violence. *'Thou shalt not kill' is a commandment that I cannot break.* The people who do kill are barbarians. * * *

*"Any war is immoral and unjustifiable. I object to having to participate in fighting and genocide.* Our country's participation in our latest escapade is against the United Nations Charter, the Geneva Accords of 1954, our own Constitution, and if I am not mistaken, our atrocities are worthy of a modern-day Nuremburg war trial. I have had these opinions and feelings for quite a long time, but now my conscience is stronger than my will to remain silent and watch people on their way to destruction * * * [no omission indicated] yes, the ruin and destruction of themselves. It is a sheer madness.

* * * * * *

"Some people believe in a pocket God * * * [no omission indicated] one for their own use, some in an untouchable supernatural deity, while others think of religion as a way of life that envisions the day where all men can live together in perfect understanding and peace as an ultimate goal. Recently, I underwent a period of 'rebirth' in my religious beliefs. *I see God as a magnificent spirit, that lives with the vision of life with peace and understanding.* I am created in the image, and follow the philosophy.

*"Of course the question shall arise, 'Why don't you apply for a non-combatant status?' I cannot. I have a terrible revulsion against killing.* A medic has a non-combatant position. He saves lives and eases suffering; the combatant who is treated first is most likely to return to duty and continue the useless carnage. *To me it is morally wrong to perform a military duty no matter how humane it may seem to be.* This is giving consent to the goals and methods of the military." (Emphasis added.)

Lehman referred in his application to the philosophies of Henry David Thoreau, Ghandi and Dr. King, as those with whom he agrees, and said that other "anti-war people" had been instrumental in helping him form his conscientious objection beliefs.

At another point in the application, Lehman stated:

"My opinions have gained momentum in my mind every day. Day by day, *my conscience became stronger than my will to stand by and participate in an act against my morality. My senses tell me that a stance must be taken, and I must do this for a clear conscience and healthy mind."* (Emphasis added.)

The Naval personnel interviewing Lehman did not challenge his sincerity. In fact, the psychiatrist and the hearing officer both expressly found that Leh-

---

1. 28 U.S.C. § 2241(c)

The writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in custody under or by color of authority of the United States or is committed for trial before some court thereof;

* * * * *

(3) He is in custody in violation of the Constitution or laws or treaties of the United States.

man was sincere in asserting his beliefs; however, they concluded that his request for release from the armed forces should be denied because his beliefs, while sincere, were not religious in nature, but were instead based upon a personal moral code. Although recommending that Lehman's request for discharge be denied since it was based upon a personal moral code rather than upon religious beliefs, the hearing officer stated:

"In the event that current decisions recognize an individual's strong personal moral code as grounds for bonafide conscientious objection, it is recommended that this request be given consideration, in that during the course of his interview, Petty Officer Lehman did display and express a sincere objection to all forms of violence and participation in war, and to his continuation of military service."

The chaplain who interviewed Lehman felt that his beliefs were not based on any well thought out theological or religious belief and that his reasons for claiming exemption as a conscientious objector were rather vague; the chaplain reported that Lehman's position on the Vietnam war was much clearer and that Lehman felt that the Vietnam war is immoral. The chaplain concluded that Lehman was not "a true conscientious objector to all situations where violence might be involved."

Pursuant to proper Naval procedures, Lehman's commanding officer was required to and did make a recommendation, in which he stated:

"Petty Officer Lehman is adamant in his objection to membership in a military organization and seems particularly opposed to the present involvement in Vietnam. He declines assignment to non-combatant duties. He freely elaborates on his opposition to violence, the source of his beliefs, and the growing intensity of his opposition to violence in any form. He is rather vague."

By letter of October 2, 1969, the Chief of Naval Personnel denied Lehman's application for discharge on the grounds that his objection to war was based upon a personal moral code and that the chaplain had found Lehman to be essentially a selective objector to the present war in Vietnam. Lehman filed a petition for a writ of habeas corpus in the district court. A hearing was conducted at which it was agreed by the parties that testimony need not be presented but at which counsel did present oral argument. The district court denied relief and dismissed the petition. We reverse.

We cannot agree with the district court that the evidence supports a conclusion that Lehman was a selective conscientious objector rather than being opposed to all wars. There is little evidence in the record regarding Lehman's feelings about the Vietnam war. The chaplain reported that:

"His [Lehman's] position on the present war is much clearer. He feels even to be in a non-combatant position would be wrong as it would assist in what he feels is an immoral action on the part of this country. I feel he objects to the present involvement of this country in Vietnam on moral grounds, but I do not feel this man is a true conscientious objector to all situations where violence might be involved."

Mirroring the chaplain's statement, Lehman's commanding officer stated in his report that Lehman "seems particularly opposed to the present involvement in Vietnam."

In contrast to this scant innuendo of selective conscientious objection, there is direct positive evidence that Lehman was opposed to all wars, such evidence including the psychiatrist's report that Lehman had a "genuine and sincere aversion to warfare" and the hearing officer's conclusion that Lehman had displayed and expressed "a sincere objection to all forms of violence and participation in war." In his ten-page application for discharge, Lehman gave no indication that he opposed only the Vietnam war and he at one point directly stated

that "[a]ny war is immoral and unjustifiable." Lehman apparently did express disapproval of the Vietnam war in his discussion with the chaplain, but such disapproval is more consistent than inconsistent with conscientious objection, so long as he objects to war in any form and not only to the Vietnam war. As the court held in Kessler v. United States, 406 F.2d 151, 155 (5 Cir. 1969), " * * * [D]isapproval of war in Viet-Nam or any other place is certainly consistent, rather than inconsistent, with conscientious objection to armed conflict."

This court has recognized that the prospect of Vietnam duty may act as a catalyst for requesting discharge as a conscientious objector but does not by itself constitute a basis in fact for denial of discharge. United States ex rel. Tobias v. Laird, 413 F.2d 936 (4 Cir. 1969). The chaplain's statements that Lehman's position on the present war is "much clearer" and that Lehman considered the Vietnam war to be immoral in no way support the conclusion that Lehman was opposed *only* to the Vietnam war. Thus, the finding that Lehman is a selective conscientious objector is unsupported by evidence.

The second reason Lehman's request for discharge was denied was that his beliefs were based upon a purely personal moral code rather than upon religious training and belief and that he therefore did not fall within the definition of a conscientious objector, as set out in § 6(j) of the Universal Military Training and Service Act, 50 U.S.C.A. App. § 456(j), which states:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

In United States v. Seeger, 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed.2d 733 (1965), the Court enunciated the test for determining whether a claimed conscientious objector's beliefs are "religious" within the meaning of the statute:

"The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

In Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (decided June 15, 1970), 38 U.S.L.W. 4486 (June 16, 1970), the Court interpreted this language in *Seeger* to mean that:

"If an individual deeply and sincerely holds *beliefs which are purely ethical or moral in source and content* but which nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual 'a place parallel to that filled by * * * God' in traditionally religious persons. Because his beliefs function as a religion in his life, such an individual is as much entitled to a 'religious' conscientious objector exemption under § 6(j) as is someone who derives his conscientious opposition to war from traditional religious convictions." (Emphasis added.) 398 U.S. 333, 90 S.Ct. 1792 at 1796.

Lehman stated in his application for discharge that he could not break the commandment "Thou shalt not kill," that he believes any war to be immoral and unjustified, that he objects to having to participate in fighting and genocide, that he sees God as a magnificent spirit that lives with the vision of life with peace and understanding, that he has a terrible revulsion against killing, that he could not apply for noncombatant status because he believes it morally wrong to perform a military duty no

matter how humane it may seem to be, that his conscience has become stronger than his will to stand by and participate in an act against his morality, and that he must take this stance of conscientious objection in order to have a clear conscience and a healthy mind. These beliefs clearly do "occupy a place parallel to that filled by God in traditionally religious persons"; they do "function as a religion in his life"; and they do "impose upon him a duty of conscience to refrain from participating in any war at any time." It appears that Lehman's conscientious objection beliefs clearly fall within the *Seeger* and *Welsh* definition of "religious" and we reach the conclusion that Lehman is entitled to a conscientious objector exemption under § 6(j).

 Appellees point to Lehman's own characterization of his beliefs as based on morals and ethics to support their argument that his beliefs are based on a personal moral code and are not "religious" within the meaning of § 6(j). We think this argument must be rejected since the Court in *Welsh* held that sincere "beliefs which are purely ethical or moral in source and content but which nevertheless impose upon an individual a duty of conscience to refrain from participating in war" are "religious" within the meaning of § 6(j) and because the Court in *Welsh* further held that an individual's own interpretation of his beliefs is not conclusive, as the Court declared:

> "When a registrant states that his objections to war are 'religious,' that information is highly relevant to the question of the function his beliefs have in his life. But very few registrants are fully aware of the broad

scope of the word 'religious' as used in § 6(j), and accordingly a registrant's statement that his beliefs are nonreligious is a highly unreliable guide for those charged with administering the exemption." 398 U.S. 333, 90 S.Ct. 1792 at 1797.

Since Lehman is entitled to a conscientious objector exemption under § 6(j), he is entitled to release from the Navy.[2] Accordingly, the order of the district court dismissing the petition for a writ of habeas corpus is reversed, and appellees are directed to effect Lehman's discharge as soon as possible.

Reversed.

---

**2.** Department of Defense Directive Number 1300.6 provides that "[p]ersons determined * * * to meet the criteria for 1–O classification will normally be discharged 'For the convenience of the Government,'" with the discharge document specifically citing conscientious objection as the supporting reason. The directive also requires that when an individual who has not completed service of 180 days active duty is discharged for the convenience of the Government, the Selective Service System will be notified and requested to induct the individual for alternate service in the civilian work program administered by Selective Service. Since Lehman has served well over 180 days active duty, apparently he will not be subject to such alternative service in the civilian work program.