Kenneth **GOLDSTEIN**, Major, U. S. Army Hospital, Fort Jackson, South Carolina, Petitioner,

v.

William S. **COLEMAN**, Brigadier General, Commander, Fort Jackson, South Carolina, and his successor, Respondent.

Civ. A. No. 71–886.

United States District Court, D. South Carolina, Columbia Division.

Heard Oct. 28, 1971.

Decided Feb. 15, 1972.

Laughlin McDonald, Columbia, S. C., for petitioner.

John K. Grisso, U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for respondent.

## MEMORANDUM

HEMPHILL, District Judge.

### INTRODUCTION

Petitioner seeks a Writ of Habeas Corpus directing his release from the United States Army on the grounds that he is a conscientious objector. The petitioner entered active duty for a two-year period on July 15, 1970 and was assigned to Fort Jackson, South Carolina where he is presently stationed. Major Goldstein filed his application for dis-

charge as a conscientious objector pursuant to Army Regulation 635–20 on June 15, 1971. The petitioner filed this application for discharge after receiving orders alerting him for service in Vietnam.[1] The application, having been handled according to the procedure outlined in Army Regulation 635–20, was disapproved by the Conscientious Objector Review Board on August 9, 1971, and by the Adjutant General on August 16, 1971. The Conscientious Objector Review Board filed an opinion as follows:

The member's application for discharge as a conscientious objector was considered under the provisions of Army Regulation 635–20, 31 July 1970. No vested right exists for any person to be discharged from the Army at his own request, even for conscientious objection, prior to the expiration of his term of service. Discharge for conscientious objection is at the grace of the Secretary of the Army and the applicant bears the burden of clearly establishing that he meets the requirements provided by the Secretary in the above-cited regulation. The Board finds that MAJ Goldstein has not satisfied this burden. He lacks the depth of conviction required to qualify for discharge as a conscientious objector. He does not clearly establish that his conscience, spurred by deeply held moral, ethical, or religious beliefs, would give him no rest or peace if he allowed himself to remain a part of an instrument of war. Although applicant does not elaborate greatly upon his theory that any service in the military is aiding the killing which he finds to be immoral, it is primarily the delay in submission of this application and the timing of its submission which shows that applicant lacks the requisite

depth of conviction. Applicant entered active duty on 15 July 1970 and did not submit this application until 15 June 1971, after he had received orders alerting him for service in South Vietnam. In section 2b of his application, applicant indicates how his professed beliefs were formed. He sets forth a chronology which culminates, prior to his entry into the military, with an objection to the war in Vietnam. In speaking of the sources of his belief, he mentions little about war in general but shows a primary objection to the Vietnamese War. He indicates that he entered the Army and after viewing slides and talking to people, realized that war was contrary to his values. Yet, he indicates on page 10 of his application that only with orders to Vietnam did he find a conflict of duties arising between his conscience and his position in the military. This statement indicates that prior to receiving orders, his duties in the United States did not conflict greatly with his conscience, even though his values were against war and killing. Had he continued to serve in the United States without receiving orders to Vietnam, it appears he would not have found a conflict of duties and could have served consistent with his conscience. He [sic] actions indicate that he is opposed to Vietnam and opposed to service in that country but not that he is opposed to participation in war in any form. It appears that he can serve in the military in the United States consistent with his conscience. The letter from Sidney Waldman indicates that applicant is taking this position because he feels he will be supporting the war effort by going to Vietnam. This also carries an indication that applicant could serve if he was not

[1]. In his original Request for Discharge as a Conscientious Objector, he states on Page 10 of his addendum explaining his conscience: "Then I received orders to go to Vietnam. It was no longer possible to avoid making a moral decision. A conflict of duties arose and my conscience

had to be heeded. * * * As my thoughts crystallized, I knew that for me to participate in war, to continue supporting an effort in violence and bloodshed, would violate my deepest moral precepts. That is why I now declare myself a conscientious objector."

supporting the war by going overseas. The letter from William F. Tompkins indicates that, although applicant's conscientious objections to war were evident by the end of 1970, applicant was able to stick it out in the military consistent with those beliefs. MAJ Tompkins then states that applicant requested this discharge because of his orders to Vietnam and because he felt he could not endure close contact with the thing he had come to detest and be revolted by. This indicates that applicant's primary objection is to the war in Vietnam and that he could serve consistent with his conscience in the military if he remained in the United States. MAJ Goldstein was able to serve for approximately a year in the Army consistent with his conscience and without undue strain. Without orders for Vietnam, it appears that applicant could quite likely continue to serve in the military consistent with his conscience thus indicating that his primary opposition is to service in a combat zone and not a deep religious, moral or ethical position against participation in war in any form. In recommending disapproval, the CO USA Hospital, Fort Jackson, indicates that applicant has participated in military training and that his decision to request discharge as a conscientious objector crystallized only upon receipt of PCS orders to Vietnam. The CG, Fort Jackson also recommends disapproval, indicating that this application is based upon personal conscience of applicant crystallized by orders to Vietnam. In reaching its conclusions, the Board has fully considered the numerous letters submitted in support of this application as well as the favorable comment by the interviewing Chaplain. The Board finds they do not submit sufficient matters to overcome that which is discussed above.

Review by this court in cases of this nature is limited to determining whether there was a basis in fact for the denial by the Army of the relief sought by the plaintiff. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir., 1969); Cohen v. Laird, 439 F.2d 866 (4th Cir. 1971); Davenport v. Laird, 440 F.2d 380 (4 Cir. decided April 7, 1971), and United States ex rel. Greenwood v. Resor, 439 F.2d 1249 (4th Cir. 1971).

In the course of these proceedings, petitioner applied to the United States District Court of South Carolina for a temporary order restraining respondent from sending petitioner to active duty in Vietnam until his petition could be heard and determined on the merits. The district court declined to enter such an order and petitioner noted an appeal to the United States Fourth Circuit Court of Appeals, and, pursuant to Rule 8 of that court the single jurist who heard the application issued an injunction. The order of that court made a finding that petitioner had made out a prima facie case for conscientious objector status [2], so this court has approached the problem in that light.

Pursuant to Rule 52, Federal Rules of Civil Procedure, this court publishes its

## FINDINGS OF FACT

Petitioner is 31 years old, a Major and a medical doctor in the United States Army assigned to the United States Army Hospital at Fort Jackson, South Carolina. He entered the Army on July 17, 1970, pursuant to the Berry Plan for doctors and has served 15 months of a two-year tour of duty. His service has been honorable and he has never been court-martialed or subjected to non-judicial punishment in the Army. He was presented an achievement award at Fort Jackson for distinguished service as Chief of Hematology. Prior to

2. The distinguished jurist wrote: "I believe that for the Army to send to Vietnam one who makes out a prima facie case for conscientious objector status before the petitioner can get a hearing and decision on the merits in the district court is a violation of Army Regulations as well as a violation of due process."

entry into the Army petitioner attended public as well as Hebrew schools in Cleveland Heights, Ohio. He was raised in a conservative Jewish family. His religious training centered around the ethical precepts of Judaism and Isaiah's teachings of peace. He was Bar Mitzvahed at age 13 and is still active in his church. Although Judaism is not a so-called "peace church" or religion, it does affirm the right of its members to conscientious objection. Petitioner attended Oberlin College and Western Reserve University Medical School, and did internship and residency at the University of Illinois Hospital and the University of Chicago Hospital respectively. As a student he became familiar with the teachings of Martin Luther King [3] and the concept of non-violence.

Prior to entry into the Army he was torn between a desire to help medically and a desire not to contribute in any way to war. However, his duty as he then saw it was to serve as a medical officer on active duty. After entering the Army and having constant contact with those who were the victims of the war in southeast Asia and after viewing slides of a fellow physician's experiences in Vietnam and seeing the mutilation of Americans and Vietnamese, he came to realize that war was totally contrary to the values which had guided his life. He claims he came to the realization that participation in the Army in any form was a contribution to war and thus a violation of his deepest principles. His present position of conscientious objection crystallized upon receipt of orders for Vietnam. Thereafter he submitted his application for discharge as a conscientious objector.

Petitioner submitted twenty-one (21) supporting letters on behalf of his application for discharge as a conscientious objector. Without exception each reference stated or implied that petitioner was sincere and that his beliefs were deeply held, e. g., letter from Peter Goldberg, friend and fellow student at Oberlin College: "Ken's opposition to war stems both from his religious background—the deeply religious example of his father and particularly the emphasis in Judaism on the sanctity of human life that his father conveyed—and from his long standing and deep ethical beliefs . . . I do not hesitate to confirm my own belief in the sincerity and justice of Dr. Goldstein's application."; letter from Major William F. Tompkins, friend and fellow medical officer at Fort Jackson: "He is honest and sincere . . . His 'conscientious objection' to war was quite evident in his conversations by the end of last year."; and letter from Rabbi A. Aaron Segal, petitioner's pastor in Columbia, South Carolina: "We have had many discussions concerning war and I am convinced of his utmost sincerity in his views . . . and being a conscientious objector is an integral part of his religious outlook and innermost convictions."

After he submitted his application, and pursuant to Army Regulation 635–20, para. 4b(2), petitioner was interviewed by a chaplain whose duty it is to submit a report directly to the applicant's commanding officer including comments on the sincerity of the applicant in his belief and an opinion as to the source of the belief. The interview was conducted by Daniel K. Hall, Chaplain (LTC), who stated that: "I believe his views and conclusions are based on ethical and religious values and are sincere. Recommend his application for discharge as a conscientious objector be approved."

Petitioner was also examined by a psychiatrist pursuant to Army Regulation 635–20, para. 4b(2) whose duty it is to submit a report indicating the presence or absence of any psychiatric disorder. The examination was conducted by Dr. David S. Irwin (Major), who stated that: "This officer shows no evidence of psychiatric disorder. He appears to

---

**3.** As to King, his original petition asserts: "I share his feelings that the aftermath of violence leads to diversive bitterness."

be quite sincere in his beliefs as a conscientious objector." Although Army Regulation 635–20, para. 4b(3) provides an applicant for discharge as a conscientious objector the opportunity at his own option to appear in person before an officer in the grade of 0–3, or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters, and to be heard in support of the application, petitioner waived such hearing, as was his right, for the stated reasons that "my application, supporting letters, interviews with the chaplain and psychiatrist fully clarify my position and attest to my sincerity as a conscientious objector on the basis of ethical beliefs and religious training." See Army Regulation 635–20, para. 4b(3) (b).

Upon completion of the interview by the chaplain, the examination by the psychiatrist and the hearing before the 0–3 officer, if applicable, Army Regulation 635–20, para. 4b(4) requires the applicant's unit commander to indicate a recommendation of approval or disapproval and the reasons therefor upon the application for discharge. Petitioner's unit commander, Colonel Lloyd B. McCabe, acknowledged that petitioner "seems totally sincere in the opinions expressed" in his request for discharge, that it appeared "that his decision to request discharge as a conscientious objector crystallized upon receipt of PCS orders to Vietnam" and that "the arguments submitted are strong and filled with apparent sincerity." Colonel McCabe recommended disapproval, however, for the reasons that: (1) petitioner had not claimed conscientious objector status

prior to entry into the Army; (2) although he stated in his application that he had not handled fire arms while in the Army, petitioner's Army record reflects he fired expert with the M–14 rifle;[4] (3) there were apparent inconsistencies[5] in his statements of opposing war from early childhood, and (4) petitioner's views were "confined to the personal conscience of the individual" and were thus "invalid when applied to the whole of society." In forwarding petitioner's application to the Department of the Army for final determination, the Assistant AG acting for the Commanding General of Fort Jackson, the respondent herein, recommended disapproval for the reasons that the request was "confined to the personal conscience of the individual . . . and was crystallized upon receipt of orders to Vietnam." Petitioner's application was disapproved by the Department of the Army, Class 1–0 Conscientious Objector Review Board for the reasons that: (1) "he lacks the depth of conviction required to qualify for discharge as a conscientious objector."; (2) the delay and timing of the submission of the application; (3) selective objection to the war in Vietnam; and, (4) his participation in military training, i. e., qualifying as expert with the M–14 rifle.[6]

■ A review of the file and attachments in this case shows beyond question that petitioner has made out a prima facie case for discharge as a conscientious objector by reason of sincere opposition to participation in war in any form based upon religious training and belief and moral-ethical code, and that he is entitled to the relief he seeks.[7]

---

4. Upon hearing the matter counsel stipulated that he did not fire the rifle.

5. These inconsistencies were apparent in the record reviewed by this court.

6. See note 4 supra.

7. While respondent does not make the matter an issue in this case, the court notes in passing that one professing Judaism, as does the petitioner Dr. Goldstein, provided he meets the other criteria, can qualify for conscientious objector status.

United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969) ("Judaism forms the basis of his beliefs.") ; United States v. Shacter, 293 F.Supp. 1057 (D. Md.1968) ; United States v. Levy, 419 F.2d 360, 366 (8th Cir. 1969) ("As a child he was brought up in the Jewish religion and attended the synagogue often.") and, United States ex rel. Sheldon v. O'Malley, 137 U.S.App.D.C. 141, 420 F.2d 1344, 1346 (1969) ("Appellant related his upbringing in the Jewish faith, to which he

## CONCLUSIONS OF LAW

This court has jurisdiction of the parties and the subject matter of this action pursuant to 28 U.S.C.A. Section 2241 and petitioner has exhausted all of his in-service remedies. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969).

One seeking classification as a conscientious objector bears the burden of establishing prima facie compliance with the requirement that he be conscientiously opposed to participation in war in any form based upon training and belief. Whether prima facie compliance is made out depends on whether the applicant "actually submitted sufficient information . . or whether, on the other hand, his claim is frivolous on its face." United States v. James, 417 F.2d 826, 829 (4th Cir. 1969). See also: United States v. Bortlik, 122 F.Supp. 225, 227 (E.D.Pa.1954); and, Parr v. United States, 272 F.2d 416, 419 (9th Cir. 1959). As did the Fourth Circuit, this court finds that petitioner has submitted "sufficient information" both in his application and in his letters of support to make out a prima facie case for conscientious objector status. Once such a case has been made, the Army then has the burden of showing something substantial in the record supporting a denial. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); and, United States v. Corliss, 280 F.2d 808 (2d Cir.), cert. denied 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960). "Dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." 346 U.S. at 397, 74 S.Ct. at 158. In accord: Bates v. Commander, 413 F.2d 475 (1st Cir. 1969). Reasons must be given for the action taken. United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); Ross v. McLaughlin, 308 F.

Supp. 1019 (E.D.Va.1970). To rebut a prima facie case there must be "some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which substantially blurs the picture painted . . . and thus casts doubt on . . . sincerity, Batterton v. United States, 8 Cir., 1958, 260 F.2d 233." Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969).

The Conscientious Objector Review Board considered the "reasons" for recommendation of disapproval given by petitioner's Commanding Officer in reaching its own decision. These reasons, however, furnish no basis in fact for the recommendation of disapproval nor the ultimate denial of petitioner's application for discharge. Army Regulations prohibit consideration of requests for separation based upon conscientious objection which existed prior to entry into the military and require consideration of those arising subsequent thereto. Army Regulation 635–20, para. 3. Moreover, the Army acknowledged that petitioner's claim crystallized only after entry upon active duty and receipt of orders for Vietnam. As for the claim that petitioner's military records show that he qualified expert with the M–14 rifle, the parties stipulated that the records in question were falsified by Army officials. Finally, the Army's findings that petitioner's views, which are admitted to be genuine and sincerely held, are nonetheless "invalid when applied to the whole of society," reflects some misunderstanding of the concept of conscientious objector status and the right of one qualifying to receive it. The fact that conscientious objection is incompatible with an officer's own beliefs about war and the need for a common defense is irrelevant to the question of petitioner's entitlement to the discharge he seeks. See DOD Directive, Number 1300.6, para. V C: "Evaluation of the sincerity of a claim of conscien-

continues actively to adhere."). This has nothing to do with the "six days war" or

the pending gift/purchase of American war planes.

tious objection requires objective consideration of professed belief not generally shared by persons in the military service. For that reason, particular care must be exercised not to deny bona fide convictions solely on the basis that the professed belief is incompatible with one's own."

 The reasons given in support of his recommendation of disapproval by the respondent Commanding General of Fort Jackson also fall short of furnishing a rational basis in fact for the denial. Personal conviction and conscience are the essence of any claim for conscientious objector status while it is settled doctrine in this Circuit that crystallization of conscientious objection upon receipt of orders for Vietnam standing alone cannot furnish grounds for denial of the classification.

The Conscientious Objector Review Board gave as the primary reason for disapproving Dr. Goldstein's application the delay and timing of its submission, i. e. after receipt of orders for Vietnam. However, "there is no longer any doubt that the mere fact that the prospect of combat duty in Vietnam may have acted as a catalyst and may have affirmatively been the stimulus for the submission of a request for discharge, is not, standing alone, sufficient to represent a basis in fact to reach the conclusion made in this case." Ross v. McLaughlin, supra, 308 F.Supp. at 1024, citing United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969). For a similar holding see United States ex rel. Lehman v. Laird, 430 F.2d 96 (4th Cir. 1970). As the First Circuit noted in Bates v. Commander, 413 F.2d 475, 480 (1st Cir. 1969): "Whatever the state of development of petitioner's insight, it is of no consequence to this inquiry. It matters only that he sincerely believes . . . " If the Army prevails on this point, no member of the Armed Services could ever qualify as a conscientious objector.

 As Judge McEntee observed in Bates v. Commander, supra, 413 F.2d at 478: "By the Commandant's reasoning,

therefore, petitioner's claim cannot be considered if it arose prior to his enlistment and is evidence of insincerity if it arose afterwards. By the force of this logic, no member of the armed services could ever qualify as a conscientious objector." The language and logic of Bates was specifically approved in United States ex rel. Greenwood v. Resor, 439 F.2d 1249, 1252 (4th Cir. 1971): "Moreover, this court has held that neither impending military duty . . . nor the voluntary assumption of military obligation, . . . nor the advance stage of an applicant's training . . . are sufficient grounds for rejecting [the] claim.", citing Lehman v. Laird, supra, Tobias v. Laird, supra, and Brooks v. Clifford, supra, all Fourth Circuit cases.

The Board also asserts that Dr. Goldstein's objection "shows a primary objection to the war in Vietnam" concluding that he is in reality a selective objector and thus not entitled to the classification he seeks. There is, however, nothing in the record to warrant such a conclusion. The application itself speaks consistently in terms of opposition to all wars, e. g. "For me to participate in war in any capacity would violate my innermost feelings and conscience."; "Warfare is a reversion to primitive instincts and a denial of all the ideals for which humanity strives."; and, "War has always dealt in brutality and devasting violence." The petitioner is obviously opposed to the war in Vietnam. But such opposition is entirely consistent with his claim. "Disapproval of war in Viet-Nam or any other place is certainly consistent, rather than inconsistent, with conscientious objection to armed conflict. Really, if Kessler had said that he was a conscientious objector but nevertheless approved of any war this would have been such an inconsistency as to have undermined the sincerity of his . . . objection to all wars." Kessler v. United States, 406 F.2d 151, 155 (5th Cir. 1969). Dr. Goldstein's opposition to the war in Vietnam furnishes

no rational basis for the denial of his claim.

More recently, in Gillette v. United States (1971) 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168, the Supreme Court speaking through Mr. Justice Marshall ruled: " * * * conscientious scruples relating to war and military service must amount to conscientious opposition to participating personally in any war and all war." Giving to petitioner's statement the sincerity accorded him by the chaplain and his Chief Medical Officer, his rather voluminous protestations meet the test of *Gillette.*

 The Army seeks further to justify its denial of petitioner's claim on the grounds of insincerity. However, the chaplain who interviewed him and whose specific duty under Army regulations is to make a finding of sincerity or insincerity stated that: "I believe his views and conclusions are based on ethical and religious values and are sincere. Recommend that his application for a discharge as a conscientious objector be approved." The psychiatrist who also had an opportunity to observe and question petitioner found that: "He appears to be quite sincere in his beliefs as a conscientious objector." The opinions of those who have had an opportunity to confer with the applicant are entitled to deference and will be given more weight by the courts than those of individuals who have not, i. e. the officers on the Conscientious Objector Review Board. "The interviewing chaplain is in *the best* position to determine whether there is a . . . core to an applicant's belief." United States ex rel. Greenwood v. Resor, supra, 439 F.2d at 1251 [emphasis supplied].

In complete accord is Bott v. Coleman, No. 71–146, Slip Opinion, p. 9, May 3, 1971, District of South Carolina:

Such recommendations from persons who have had the opportunity of personal interviews with the applicant weigh very heavily with the Court, much more so than the recommendations of officers in petitioner's chain of command where there is no showing in the record what personal relationship they may have had with petitioner himself. Likewise the court would give far more weight to the recommendations of those who had interviewed personally the petitioner than it would the conclusions of the Conscientious Objector Review Board and the Adjutant General, before neither of whom did petitioner have an opportunity to appear, and the record shows that their conclusions were based primarily upon conclusory statements made by military officers in petitioner's chain of command who apparently had no personal contact with petitioner.

Those in the best position to make a judgment as to petitioner's sincerity— the chaplain, psychiatrist and his immediate commanding officer—found him to be sincere. A finding of insincerity by the Conscientious Objector Review Board is unsupported by the administrative record in this case.

The decision of the Department of the Army may not stand for the additional reason that it was based upon an erroneous assumption of fact, that petitioner had fired expert with the M–14 rifle. "Where the . . . board's conclusion may be explainable upon alternate grounds, both legally· acceptable and unacceptable, the risk is too great that we would place an imprimatur upon an insupportable basis of decision if we were to accept the government's contention." United States v. James, supra, 417 F.2d at 832. See Ross v. McLaughlin, supra, 308 F.Supp. at 1024, where the Board found that every officer in the chain of command had recommended disapproval. In fact, the applicant's Base Commander had recommended approval. In granting the relief requested by the petitioner, the court said that " . . . any decision of the Board which rested on that erroneous finding is legally of no consequence." See also: Manke v. United States, 259 F.2d 518 (4th Cir. 1958); United States v. Bova, 300 F.Supp. 936,

940 (E.D.Wisc.1969) (where the Justice Department's recommendation contained factual error, the court found that it "must assume that the Appeal Board relied on that source, and under [the] circumstances, the Appeal Board's determination would be unfair and the defendant entitled to judgment of acquittal.") ; United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968) ("Where two grounds for decision—one correct and one incorrect—are asserted and where there is no way of knowing which was relied upon, the courts may not assume that the correct one was used."; United States v. Englander, 271 F.Supp. 182 (S.D.N.Y.1967); (For this reason alone the indictment would have to be dismissed); Gatchell v. United States, 378 F.2d 287, 292–293 (9th Cir. 1967) (The court "will not search the record to find other reasons when the appeal board has given specific reasons which are legally insufficient to support the appeal board's classification.") ; Sicurella v. United States, 348 U.S. 385, 391–392, 75 S.Ct. 403, 406, 99 L.Ed. 436 (1955); United States v. Jakobson, 325 F.2d 409, 417 (2d Cir. 1963), aff'd United States v. Seeger, 380 U.S. 163, 85 S. Ct. 850, 13 L.Ed.2d 733 (1965) ("Since Jakobson's classification may have rested on an erroneous ground, his conviction cannot stand.") ; and, United States v. Carroll, 398 F.2d 651 (3d Cir. 1968).

After careful consideration of the record as a whole in light of applicable decisions of this and other circuits and those of the Supreme Court, this court concludes that petitioner is entitled to classification and discharge from the Army as a conscientious objector.

It is therefore ordered that petitioner be granted an honorable discharge from the United States Army as a conscientious objector.

This court directs that any action hereon by the Army (to carry out the terms of this Order) be withheld, and stayed, for sixty days from the date hereof in order that respondent may, if so advised, proceed under Rule 3 and Rule 4, Federal Rules of Appellate Procedure. All parties may apply for such further relief as is in the authority of this court.

And it is so ordered.