409 F.2d 700
 UNITED STATES of America ex rel. Peter S. BROOKS, Appellant,
v.
Clark CLIFFORD, Secretary of Defense, Stanley R. Resor, Secretary of the Army and Commanding Officer, Fort Jackson, South Carolina, Appellees.
 No. 13275.
 United States Court of Appeals Fourth Circuit.
 Argued March 6, 1969.
 Decided March 20, 1969.
 Rehearing Denied June 25, 1969.
 
 Leonard B. Boudin, New York City (Rabinowitz, Boudin & Standard, Joan Goldberg, New York City, and Jack F. McGuinn, Columbia, S. C., on brief), for appellant.
 Wistar D. Stuckey, Asst. U. S. Atty. (Klyde Robinson, U. S. Atty., on brief), for appellees.
 Before WINTER, CRAVEN and BUTZNER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Petitioner, a member of the United States Army, in which he voluntarily enlisted after being classified 1-A by his local selective service board, sought a writ of habeas corpus to effect his release upon his claim that he was a conscientious objector. The writ was sought after his claim was rejected by the Army. The district court, concluding that there was a basis in fact on which the Department of the Army could bottom its decision that petitioner's objection to further military service had as its sole basis a merely personal code, denied the writ; but we are satisfied from our study of the record that it should have been granted. Accordingly, we reverse, with directions that the writ shall issue, upon the conditions hereafter set forth.
 
 
 2
 * Petitioner was an instructor at Dutchess County Community College, in Poughkeepsie, New York. He grew up in a Humanist family and, at the time he attended college, he was a member of the Colgate University Church Board. Thereafter and coinciding with the period that he pursued graduate studies, he worked with the National Student Christian Federation, and participated in a program similar to the Peace Corps, called "Crossroads Africa," sponsored by various philanthropic organizations.
 
 
 3
 When petitioner was classified 1-A by his local Selective Service board in Poughkeepsie, he did not seek to avoid military service. He volunteered for induction, and was inducted into the United States Army on February 12, 1968. He performed his basic training and advanced infantry training at Fort Jackson, South Carolina, where he is presently stationed.
 
 
 4
 During the time that petitioner was receiving his advanced infantry training his views in opposition to participation in war crystallized and he concluded to seek his release as a conscientious objector.
 
 
 5
 While § 6(j) of the Military Selective Service Act of 1967, as amended, 50 U.S. C.A. App. § 456(j), provides that no person shall be required "to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form,"[1] not until August 21, 1962, the effective date of Department of Defense Directive (hereafter "D.O.D.") No. 1300.6, was any provision made to provide special treatment or relief to an individual who became a conscientious objector after entering the military service. Present D.O.D. No. 1300.6, effective May 10, 1968, as amended, December 20, 1968, inter alia, states that Congress has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces and accordingly has provided that a person having bona fide religious objections to participation in war in any form shall not be inducted into the Armed Forces but will be required to engage in civilian work of national importance. Consistent with this policy, the directive continues, bona fide conscientious objection by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. The directive then sets forth certain types of conscientious objection which will not be recognized and spells out the criteria for determining conscientious objection and procedures to be followed in regard to persons inducted into military service who claim to be conscientious objectors when they assert such claim.
 
 
 6
 Army Regulation No. 635-20 (hereafter A.R. 635-20), dated December 3, 1968, also sets forth the policy, criteria and procedures for disposition of army personnel who, by reason of religious training and belief, claim conscientious objection to participation in war in any form. The procedure contemplated is that military personnel will submit an application for discharge containing general information and detailed data in regard to their religious training and belief. In the case of an applicant who has served more than 180 days in the military service, he is required to state his willingness to engage voluntarily in post-military work of the nature encompassed by the civilian work program administered by Selective Service; one who has served less than 180 days is subject to further order of his local Selective Service board. An applicant requesting discharge must receive a counseling interview by a chaplain and a psychiatric interview by a psychiatrist — the latter undoubtedly because a person discharged as a conscientious objector forfeits all rights under laws administered by the Veterans Administration unless he was insane. Additionally, the applicant has the opportunity to appear (with counsel retained by him, if he desires) before an officer in the grade of 0-3 or higher who is knowledgeable in policies and procedures relating to conscientious objector matters. That officer is required to enter his recommendation and the reasons therefor.
 
 
 7
 When the various interviews have been completed and the recommendation of the interviewing officer made, the application, with accompanying documents, is forwarded along the line of command, ultimately to the Adjutant General, for final determination. Where an applicant having less than 180 days of service is discharged, the Selective Service System is requested to induct him into its conscientious objectors' work program. All applicants discharged by reason of conscientious objection are granted an Honorable Discharge Certificate or a General Discharge Certificate.
 
 
 8
 In accordance with D.O.D. No. 1300.6, petitioner initiated, on August 10, 1968, proceedings for his discharge. He was examined by a psychiatrist, who found that he had no mental defects sufficient to warrant separation from the service, and that there was no evidence of mental illness. Next, he was interviewed by the chaplain, Major Earle W. Hutchison, whose formal report stated:
 
 
 9
 "I have interviewed PVT (E-2) Peter S. Brooks, US 52 772 026, B-12-3, concerning his views on non-participation in armed conflict. I have also read carefully the statements he is submitting in which he sets forth his thinking. His standards are certainly derived from Christian religious principles. I do not believe a man should be faulted for having a high degree of idealism and humanitarian concern. PVT Brooks seems to have consistently implemented his ideals in practical projects of humanitarian concerns working for the betterment of mankind.
 
 
 10
 "It is in no sense derogatory of the infantryman to state that PVT Brooks could be of benefit to his country in a capacity other than that of an infantryman. If discharged from the service PVT Brooks is willing to serve in some Selective Service Work Project. If properly assigned, his skills and teaching abilities could be most beneficial to our nation."
 
 
 11
 Following these interviews, petitioner filed a formal request for discharge as a conscientious objector, under date of September 3, 1968. He gave as the reason for his request that "because of my religious principle I cannot in conscience participate in combatant or non-combatant training or service." Attached to the formal request was a statement setting forth the information required by D.O.D. 1300.6 and A.R. 635-20. In this statement he described the religious denomination of his parents as Humanist, advised that he had not claimed conscientious objector status prior to his entry into the armed forces, and consented to the issuance of an order by his local Selective Service board to perform work under the Selective Service Conscientious Objectors' Work Program. Alternatively (if he had more than 180 days in the military service), he stated his willingness to engage voluntarily in post-military work of the nature encompassed by that program. The description of the nature of his belief which was the basis of his claim is set forth in the margin.[2] This belief, he stated, was acquired from the example and thinking of his parents and from having been brought up in a home concerned with the problems of human dignity and human rights. He stated that he had adhered to these views "as long as I can remember." He denied that there were any circumstances in which he believed in the use of force except to restrain those who are psychologically or physically unbalanced who threaten to harm themselves or others; and, as evidence of the consistency of his views, he referred to his college membership on the university church board, a group which he described as having as its primary concern the study of religious beliefs and principles and their application to the students' life. He also referred to his service in 1962 in "Crossroads Africa" and to work which he performed in 1963 in an institution for disturbed and homeless children as a cottage parent, as well as work, while a graduate student, with the National Student Christian Federation Committee on Youth in Africa, a group concerned with alleviating the problems of human misery in South Africa. He denied membership in a formal religious sect or organization.
 
 
 12
 Also attached to this request, were a number of letters from various persons, including a Unitarian minister, attesting to the depth and sincerity of his views and the manner in which those views had been evidenced by the way in which he had lived his life.
 
 
 13
 On the same day — September 3 — petitioner's commanding officer stated that petitioner should not be given a conscientious objector discharge because he had graduated from advanced infantry training and was not required to participate in subjects related to weapons. The next day, the commanding officer of his battalion wrote that, since petitioner had completed eight weeks of basic combat training and nine weeks of advanced infantry training before applying for a classification as a conscientious objector, he strongly recommended that the application be disapproved; and, on September 5, the Assistant Adjutant, acting for the commander of petitioner's brigade, recommended disapproval "in view of preceding comment [that of the commander of petitioner's battalion]."
 
 
 14
 Petitioner was afforded an interview on September 27, 1968, by Captain John C. Browning, the officer "knowledgeable in policies and procedures relating to conscientious objector matters." The essention portion of his report follows:
 
 
 15
 "5. In reviewing PVT Brooks' application and in considering the answers to my questions, and general discussion in which he and his counsel participated, it is my opinion that his application is based partially upon personal morals and partially upon religious beliefs. It is impossible for me to determine the degree to which his application is based upon either of the two. PVT Brooks has, in my opinion, based his request for discharge upon religious scrupples [sic] and beliefs to some degree. However, in reviewing his application and based upon information gained through the interview, I do not believe that he is bound by religious beliefs to the point that would warrant discharge from service. Therefore, I recommend that he be classified as a conscientious objector UP paragraph 2-12, AR 600-200, and that he serve the remainder of his term of service as a noncombatant."
 
 
 16
 Although, on October 7, 1968, the Adjutant General recommended disapproval of petitioner's application because "[e]vidence submitted is insufficient to warrant the classification * * * as a conscientious objector," the Adjutant General, nevertheless, requested an advisory opinion from the Director of Selective Service and was advised by a Special Assistant to the Director that petitioner would not be classified as a conscientious objector if he were being considered for classification under the Act.
 
 
 17
 Petitioner's application was denied by the Department of the Army on December 13, 1968, and, notwithstanding a clear direction to the contrary, contained in A.R. 635-20, he was not notified of that fact until he informally learned of the matter on January 15, 1969. His application for a writ of habeas corpus in the district court followed promptly thereafter.
 
 II
 
 18
 Although we have recited the facts at length, the really salient ones are that only three persons had personal interviews with petitioner, the first, whose findings may be disregarded for present purposes, was the psychiatrist who found that petitioner suffered from no mental disease, the second, the chaplain, who found that petitioner's beliefs stemmed from religious principles, and the third, the expert on matters of conscientious objection, who found that petitioner was motivated in part by religious beliefs and in part from a personal moral code, the degree of motivation from each source being indeterminable.
 
 
 19
 In brief and in argument, respondent equivocated between accepting these findings as fully supported by the evidence and in attacking these findings and arguing that, notwithstanding them, there was a basis in fact for the Army's determination that petitioner was not a conscientious objector within the meaning of § 6(j) of the Act. The parties are in agreement, and we concur, that the scope of judicial review in a case of this nature is the sharply limited one of determining whether there was a basis in fact for the finding that petitioner was not a conscientious objector. Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968); Cooper v. Barker, 291 F.Supp. 952 (D. Md.1968). See also, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Before dealing with the question of whether there was a basis in fact for denial of conscientious objector status on its merits, we first notice the question of whether the district court and this Court have jurisdiction in the premises.
 
 III
 
 20
 On brief and diffidently in argument, respondent questioned the jurisdiction of the district court and of this Court to review, on application for a writ of habeas corpus, the correctness of the Army's disposition of petitioner's claim of right to discharge on the basis that he is a conscientious objector, even under the limited scope of review to which we have referred. The district court upheld its own jurisdiction, and we have no doubt, correctly. United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2 Cir. 1968); Hammond v. Lenfest, supra; Brown v. McNamara, 387 F.2d 150 (3 Cir. 1967), cert. den. sub nom., Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968); Cooper v. Barker, supra; Gann v. Wilson, 289 F. Supp. 191 (N.D.Cal.1968). Our conclusion in this respect is reinforced by the great expansion in use of the Great Writ which has recently occurred, as evidenced by such decisions as Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), and Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).[3] Respondent relies upon Morbeto v. United States, 293 F.Supp. 313 (C.D.Cal.1968), for the proposition that the entire matter of discharge of conscientious objectors rests in the unbridled discretion of the Army and the Department of Defense. Aside from the fact that the district court in Morbeto relied in part upon an earlier version of D.O.D. No. 1300.6 which had been superseded even before that decision was handed down, we disagree with the apparent holding of that case.
 
 
 21
 We do not consider whether the Army and the Department of Defense must provide regulations for the discharge of conscientious objectors in light of the unequivocal articulation of national policy by Congress that persons conscientiously opposed to participation in war by reason of religous training and belief shall not be subject to service in the armed forces. But see, Brown v. McNamara, 263 F.Supp. 686, 691 (D. N.J.), aff'd., 387 F.2d 150 (3 Cir. 1967), cert. den. sub nom., Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968), suggesting that such regulations are not required. It suffices for present purposes that regulations have in fact been promulgated. Such regulations once issued must be followed scrupulously. Hammond v. Lenfest, supra, at 715. It is true that certain passages in D.O.D. No. 1300.6 suggest that complete discretion in dealing with in-service conscientious objectors is to be retained by the armed forces. Thus, it is stated that conscientious objectors "will be recognized to the extent practicable and equitable" and "[a]dministrative discharge prior to the completion of an obligated term of service is discretionary with the military Service concerned." Initially, we note that the decision in the instant case was not based upon the theory that the relief sought was either "impracticable" or "inequitable." Furthermore, we do not believe that such administrative declarations will, in any event, preclude judicial review of action which is essentially arbitrary, capricious, or irrational, compare Brown v. McNamara, 387 F.2d 150, 152-153 (3 Cir. 1967), or review of a decision concerning a discharge application which has no basis in fact. See, Hammond v. Lenfest, supra, at 716; Smith v. Resor, 406 F.2d 141 (2 Cir. 1969).[4]
 
 
 22
 Additionally, we reject, as did the district court, the notion that petitioner has failed to exhaust his administrative remedies within the Army by failing to seek a correction of his records. E. g., Gann v. Wilson, 289 F.Supp. 191, 193 (N.D.Cal. 1968), and cases cited therein.
 
 
 23
 We hold, therefore, that the district court had jurisdiction in the premises, as do we.
 
 IV
 
 24
 Neither the Army, in concluding that petitioner had not established that he was a conscientious objector entitled to discharge, nor the district court, in affirming the correctness of the Army's conclusion, advanced any reason which we deem legally sufficient to support that result. The fact that petitioner delayed the assertion of his claim until after his views had been formulated and that that did not occur until after his military service had begun and he had completed basic training and advanced or special weapon training is no ground to deny him discharge either under the Act, or the established administrative procedures, if in reality his views are sincerely held and are the result of religious training and belief. Indeed, the administrative procedures were devised for the very purpose of permitting the assertion of a claim of conscientious objection and proof of it, entitling the claimant to be discharged, when the objection was not formulated until after military service had begun. As far as the conclusory assertion that the evidence is insufficient to support petitioner's contention that he is a conscientious objector is concerned, we conclude, to the contrary, that all of the evidence points unmistakably to the conclusion that petitioner is in fact a conscientious objector within the guidelines established by the Supreme Court.
 
 
 25
 The motives which petitioner says prompt his action are religious training and beliefs within the meaning of § 6(j) of the Act. United States v. Seeger, supra. In that case it was held that the exemption is available to one who possesses:
 
 
 26
 "[A] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualified for the exemption * * *." 380 U.S., at 176, 85 S.Ct. at 859.[5]
 
 
 27
 Indeed, the views of Seeger, who was held to be a conscientious objector within the meaning of then § 6(j) were strikingly similar to those of petitioner. Seeger was described by the Court as one who held a "`belief in and devotion to goodness and virtue for their own sakes, and a religious faith in a purely ethical creed'" and an "ethical belief in intellectual and moral integrity `without belief in God, except in the remotest sense.'"
 
 
 28
 That petitioner held similar views sincerely and that they stem from religious training and beliefs is not doubted by the only two Army officers who have discussed them with him. Nothing in his own written statements belies the correctness of these conclusions, and there is nothing else in the record to controvert them.
 
 
 29
 The only real problem that the case presents is the additional finding by Captain Browning that petitioner's application was also based in part "upon personal morals." Undoubtedly, Captain Browning had reference to the portion of § 6 (j) which denies the exemption to one opposed to war on "essentially political, sociological, or philosophical views, or a merely personal moral code." (emphasis supplied.)
 
 
 30
 The basis for Captain Browning's conclusion in this respect is not fully disclosed, nor has the precise meaning of "a merely personal moral code" ever been satisfactorily judicially defined. Cf. United States v. Seeger, supra, at 185-186, 85 S.Ct. 850; United States v. Shacter, 293 F.Supp. 1057 at 1060. We find it unnecessary to attempt any clearer definition or to examine the record to determine the presence or absence of support for the conclusion, because we are satisfied that even if petitioner was motivated in part by a personal moral code, he is still entitled to the exemption because of the unquestioned finding that he was also substantially motivated by views derived from religious training and belief.[6]
 
 
 31
 In United States v. Seeger, supra, the Court discussed the situation of registrants whose beliefs are based on a "merely personal moral code." In dealing with this exception to the exemption, the Court noted that it had construed the statutory definition of a conscientious objector broadly and "it follows that any exception to it must be interpreted narrowly." Significantly, the Court continued, "[t]he use by Congress of the words `merely personal' seems to us to restrict the exception to a moral code which is not only personal but which is the sole basis for the registrant's belief and is in no way related to a Supreme Being." 380 U.S., at 186, 85 S.Ct. at 864 (emphasis supplied). Thus, we read Seeger as holding that a disqualifying "merely personal code" is one which, unlike that of petitioner, constitutes the sole basis for his beliefs.
 
 
 32
 It is true that an argument can be advanced that Seeger should be read differently because the section of the opinion in Seeger which deals with the interpretation of § 6(j) — as distinguished from the application of § 6(j) to the cases under review from which our quotation is extracted — referred to Selective Service System Monograph No. 11, Conscientious Objection 337 (1950), as construing Berman v. United States, 156 F. 2d 377 (9 Cir. 1946), and United States v. Kauten, 133 F.2d 703 (2 Cir. 1943), to hold that a valid conscientious objector claim to exemption must be based solely on religious training and belief and suggested that Congress followed Berman in formulating the statute. United States v. Seeger, at 179-180, 85 S.Ct. 850. We think such a reading insupportable, however, when in the later portion of the opinion undertaking to apply the general meaning of § 6(j) to the facts in Seeger's case, the Court stated that Seeger would be disqualified from the exemption only if a merely personal code was the sole basis for his belief.
 
 
 33
 In our reading of Seeger, we are supported by Fleming v. United States, 344 F.2d 912 (10 Cir. 1965), which flatly held that the beliefs of a registrant which are, in part at least, based upon religious convictions are sufficient to entitle him to the conscientious objector classification.[7] We agree with and rely on this decision.
 
 V
 
 34
 From what we have said, we conclude that petitioner is entitled to release, in accordance with his undertaking that he perform post-military work of the nature encompassed by the civilian work program administered by Selective Service.[8] If, in fact, the Army refuses petitioner his honorable discharge in accordance with A.R. 635-20 the writ should issue forthwith. We do not presume, however, that such refusal will be forthcoming, since we have expressed our view that petitioner is entitled to an honorable discharge. In reversing the district court and remanding the case for issuance of the writ, we, therefore, authorize the district judge to stay its effective date a reasonable period to enable petitioner to be honorably discharged in accordance with the regulation.[9]
 
 
 35
 The Clerk is directed to issue the mandate forthwith.
 
 
 36
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 50 U.S.C.A. App. § 456(j):
 "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term `religious training and belief' does not include, essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title, be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform, for a period equal to the period prescribed in section 4(b) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title."
 
 
 [2]
 "2)a) Describe the nature of your belief which is the basis of your claim
 I believe in the responsibility of each man to act and behave according to the principles of Goodness, common to all religions. I believe that each man has the responsibility, because of the gift of life itself, to act with justice, compassion, love, and honesty in his relations with his fellow men. I have tried to act and behave according to these principles throughout my adult life. Further, I find the idea of taking another man's life morally repulsive. Man should not, I believe, take away and destroy that which he cannot restore; as for example, the gift of life itself. In taking another man's life, man denies the gift of life, thereby denying his responsibility to act according to the principles of Goodness. I do not see how something so morally repugnant as taking another man's life can promote or protect a `good.' A man who kills is, I believe, acting contrary to the teachings of love, compassion, and justice. Just as I feel that war is contrary to the principles of Goodness, I also believe that war is essentially an inhuman or subhuman activity. Man was given, along with the gift of life, the gift of reason. It is his duty to preserve and create life, not destroy it. Aside from my feeling that war tends to destroy the reasoning processes among men, I also believe that man should, by now, have invented some better way to resolve disputes. I believe that when man uses force to settle a dispute, he denies his gift of reason, he sinks to the level of the beast in the jungle, denies his very `human-ness,' his humanity."
 
 
 [3]
 "Habeas corpus has also been consistently regarded by lower federal courts as the appropriate procedural vehicle for questioning the legality of an induction or enlistment into the military service." Jones v. Cunningham, 371 U.S. 236, 240, 83 S.Ct. 373, 375, 9 L.Ed.2d 285 (1963)
 "It [the Great Writ] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose — the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Jones v. Cunningham, supra, p. 243, 83 S.Ct. p. 377, quoted with approval in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).
 
 
 [4]
 "Our reluctance, however, to review discretionary military orders does not imply that any action by the Army, even one violative of its own regulations, is beyond the reach of the courts. See Hammond v. Lenfest, 398 F.2d 705, 710 (2d Cir. 1968). Although the courts have declined to review the merits of decisions made within the area of discretion delegated to administrative agenciesthey have insisted that where the agencies have laid down their own procedures and regulations, those procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved." (emphasis supplied.) 406 F.2d at 145.
 
 
 [5]
 It should be noted that this conclusion was reached at a time when § 6(j) required that the qualifying religious training and belief stem from the individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relationship. Pub.L. 90-40, effective June 30, 1967, eliminated this restrictive language
 
 
 [6]
 The substantiality of this factor is an inescapable inference from Captain Browning's recommendation that the petitioner be classified as a conscientious objector and assigned to noncombatant duty
 
 
 [7]
 "It may be true that appellant has been influenced, in the words of the hearing examiner `* * * more by sociological and philosophical views than by religious beliefs or the dictates of a deity.' But, it is also clear that he has been influenced by religious training and belief. Therefore, Fleming comes clearly within the definition of a `conscientious objector' as defined by the Supreme Court in the three recent cases [United States v. Seeger, with which was consolidated United States v. Jakobson and Peter v. United States] and the conviction must be reversed." Fleming v. United States, 344 F.2d, at 916
 
 
 [8]
 It is unnecessary to consider petitioner's other claim that he was denied procedural and substantive due process and that he was denied his rights under the First Amendment
 
 
 [9]
 D.O.D. 1300.6 specifies that the type of discharge, i. e., honorable or general, to be given "will be determined by the person's military record." Since the only references to petitioner's military record before us show that it has been exemplary, we have inferred that petitioner is entitled to an honorable discharge. If such is not the fact, respondent, upon exhibiting supporting proof, may make timely application for a recall of the mandate and modification of the opinion