Robert Jay COHEN, Stephen M. Gaydos, Calvin Clay Greene, III, Jose F. L. Medina, and Francisco Rivera Pomales, Appellants,

v.

Melvin LAIRD, Secretary of Defense, Stanley R. Resor, Secretary of the Army; and Major General James F. Hollingsworth, Commanding General of Fort Jackson, South Carolina, Appellees.

No. 14866.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 16, 1970.

Decided March 19, 1971.

Craven, Circuit Judge, filed concurring and dissenting opinion.

James A. Long, IV, Charlotte, N. C. (Jack McGuinn, Columbia, S. C., James A. Rebholz, and Melvin Wulf, New York City, on the brief), for appellants.

Joseph O. Rogers, Jr., U. S. Atty., and Charles W. Gambrell, Asst. U. S. Atty., for appellees.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

BOREMAN, Circuit Judge:

I

The members of this panel are in agreement that there was a basis in fact for denial of the applications for discharge of Cohen, Gaydos and Medina-Figueroa as conscientious objectors. Upon a review of the record, the briefs and oral arguments of counsel, we affirm the denial of relief as to these appellants named above upon the opinion of the district court, as reported in Cohen v. Laird, 315 F.Supp. 1265 (D. S.C. 1970).

II

As to Pomales-Rivera (hereafter Pomales), there is a divergence of opinion among members of the panel; hence, some discussion and explanation of the majority view follows.

Pomales filed three applications for conscientious objector classification prior to this application for discharge as a conscientious objector, the denial of which is the subject of this appeal. His initial application was disapproved by his commanding officer, by the interviewing chaplain and by the hearing officer. The chaplain found that, although Pomales was then sincere, his expressions of belief were shallow and appeared to be made as an expedient means of avoiding active combat in Vietnam. The chaplain found that his beliefs had no depth and were based on statements taken out of context, which statements the chaplain thought must have been provided by someone else since Pomales did not seem to fully understand the statements made in his own application.

In his final application, Pomales referred to "glaring inequalities" in wealth and power, and condemned the American policy of expending $60 million a year (obviously referring to the cost of conducting the Vietnam war) while letting "the rest of the word [world] fester in its nurseries." He stated that he felt that it is better to conduct "constructive wars" such as "wars against poverty" than "destructive and genocide war" (again, obviously referring to the Vietnam war). He quoted extensively from Father Drimas' vehement condemnation of the Vietnam war and his demand that the United States withdraw from Vietnam and make "massive restitution" to the Vietnamese people. Pomales subsequently told the chaplain that he had simply copied statements of what he termed the Catholic Church's "new declarations" from the "Catholic Messenger," which quotations comprised much of his final application.

 We agree with the district court that there was clearly a basis in fact for the denial of Pomales' application for discharge as a conscientious objector. While Pomales briefly and vaguely referred to "all Christian postulates" and quoted a long passage from the New Testament, most of his application is a *political* diatribe condemning America's participation in the Vietnam war; there appears to be little if any religious basis for his conscientious objector claim. While the Supreme Court in Welsh v. United States, 398 U. S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), expanded the definition of "religious training and belief" to include deeply rooted and sincere moral or ethical bases, the Court specifically stated that those whose beliefs are not deeply held and those whose objection to war rests solely upon considerations of policy, pragmatism, or expediency do not qualify as conscientious objectors. 398 U.S. 342–343, 90 S.Ct. 1792.

 Pomales would seem to fall directly within *both* categories of persons found by the Supreme Court in *Welsh* as failing to qualify as conscientious objectors. First, his beliefs do not appear to be deeply held. We agree with the district court that his application consists largely of reproductions of statements of others rather than evidencing deeply held personal "religious" beliefs against participation in war in any form; such reproductions are insufficient to qualify one as a conscientious objector. See United States v. Brown, 423 F.2d 751, 754 (3 Cir. 1970). Second, his claim seems based more upon expediency than upon sincerity. Army officials interviewing him thought that his claim was made to avoid his impending transfer to Vietnam instead of indicating a sincere conscientious objection to war. While a student, Pomales participated in ROTC for two years; he proceeded through both basic and advanced infantry training. Only when directly confronted with prospective service in Vietnam did he file an application for classification as a conscientious objector. While we recognize that such timing alone would not bar a sincere, deeply held conscientious objector claim if such belief crystallized due to the immediate prospect of combat duty in Vietnam, United States ex rel. Tobias v. Laird, 413 F.2d 936, 939 (4 Cir. 1969), we do not think it amiss for Army officials and the district court to *consider* the timing of the assertion of a claim of conscientious objection in evaluating its sincerity, especially where, as here, the claim appears to be more a collection of the thoughts of others rather than a statement of the applicant's personal beliefs.

Accordingly, we approve and affirm the finding of the district court of a basis in fact for the denial of the application of Pomales for discharge as a conscientious objector.

Affirmed.

CRAVEN, Circuit Judge (concurring and dissenting):

I agree that there is a basis in fact for denial of relief to petitioners Cohen,

Gaydos, and Medina. I disagree as to Pomales and would reverse.

Private Pomales was inducted into the Army in 1969. He holds a baccalaureate and masters degree from the University of Puerto Rico, and styles himself as a "good Catholic" who adheres to "all Christian postulates, especially those of humility and love." He now claims to be a pacifist, due in large part to his exposure to the military at Fort Jackson. "I realized how destructive will be a rifle (sic), and what will be * * * in a sense, the action of kill (sic) another person." He is opposed to his service in any capacity that furthers the country's military efforts, directly or indirectly. On Vietnam, Pomales reacted: "War-as part of all wars, I object. * * * [T]he Vietnam War is a war, and I object every one of the war (sic), all the wars. * * * [T]he final objective of the Army is to have person (sic) in some place that finally will kill persons. I object." Instead, he finds that "it's better to make constructive wars, such as war against poverty, in order to help other people, which is consistent with the law of love predicted by Christ."

Since his induction he has filed four petitions for reclassification to conscientious objector status. The first three were requests for 1–A–0 status which would entitle him to a non-combat assignment within the service. The last petition for reclassfication was for a 1–0 (conscientious objector) classification which would entitle him to a discharge. All were denied. The appeal is from the denial of the last petition.

Private Pomales' petition was processed in accordance with AR 635–20. I do not disagree with the court's rejection of petitioner's charges that the procedures followed by the Army did not meet minimum constitutional standards. My concern with Pomales' case is substantive, not procedural.

The board that reviewed Pomales' request for discharge denied his petition on the basis of the findings of his superior officers within the chain of command, and certain prescribed interviewing officers under the procedure outlined in AR 635–20. Some of these officers suggested that Pomales was "insincere" in his beliefs, as indicated by his prior participation in ROTC at the University of Puerto Rico and because of his persistent (and unsuccessful) attempts to establish conscientious objector status. One conclusion was that he was merely trying to avoid combat. These findings of insincerity were reached despite the fact that on Pomales' first attempt for conscientious objector status his chaplain stated that *"Now* the man is sincere. He is convinced *now* that he is right." (Emphasis added.)

The reviewing board correctly concluded that "[s]incerity is a threshold determination in each conscientious objector case." United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965). See also Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

Denial of sincerity cannot be based upon facts having no rational bearing upon the question. See United States v. Haughton, 413 F.2d 736, 742 (9th Cir. 1969); United States ex rel Brooks v. Clifford, 409 F.2d 700, 707 (4th Cir. 1969). That Pomales desired to avoid combat is irrelevant on the question of sincerity. All conscientious objectors entertain such a desire. Using this to discredit Pomales simply discredits his examiners and discloses a failure to grasp the nature of the belief of a conscientious objector. See, United States v. Washington, 392 F.2d 37 (6th Cir. 1968).

The submission of successive applications, the willingness of the petitioner to serve in a non-combat status, and seeking a discharge only after other avenues were denied him, lend credibility to, rather than undermine, the conclusion that Pomales was sincere. It is anomalous that these "reasons" viewed as evi-

dence of insincerity are in fact basic characteristics of one holding genuine conscientious objector beliefs.

The inference drawn by one examining officer (Burkeheimer) is that one cannot willingly participate in ROTC and subsequently become opposed to war. AR 635–20 itself refutes the inference, for it is only belief arrived at *after* induction that affords a basis for relief:

Requests for discharge after entering military service will *not* be favorably considered when (1) based solely on conscientious objection which existed, but which was not claimed (sic) *prior to induction*, enlistment, or entry on active duty or active duty for training. AR 635–20 (Emphasis added.)

Judge Winter articulated my position in this respect in his opinion in United States ex rel. Brooks v. Clifford, 409 F. 2d 700 (4th Cir. 1969).

The fact that petitioner delayed the assertion of his claim until after his views had been formulated and that did not occur *until after his military service had begun* and he had completed basic training and advanced or special weapons training *is no ground to deny him discharge* either under the Act, or the established administrative procedures, if in reality his views are sincerely held and are the result of religious training and belief. Indeed, the administrative procedures were devised for the very purpose of permitting the assertion of a claim of conscientious objection and proof of it, entitling the claimant to be discharged, when the objection was not formulated until after military service had begun. 409 F.2d at 707. (Emphasis added.)

The board ignored the findings of Chaplain Hartlage in Pomales' first application for non-combat assignment. The chaplain stated that Pomales' interpretation of church doctrine was not entirely according to Hoyle, but that *"Now the man is sincere. He is conviced now that he is right."* (Emphasis added.) In addition, Chaplain Ballentine who interviewed Pomales on his last request for reclassification included this in his report:

This EM is basing his applications on a personal faith and belief as he has derived them from the teachings of individuals and his church. Pvt. Pomales is a Roman Catholic and I believe he attempts to be devout. However, he is using parts of various of (sic) her teachings to say what he wants the Church to say in this and previous applications.

Although not recommending that Pomales be granted conscientious objector status, Chaplain Ballentine did *not* say that he was insincere in his objections to "participation in war in any form," Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j). By way of summary, it seems shocking to me that Pomales was denied the status of a conscientious objector because of prior participation in ROTC, aversion to combat, and his past repeated attempts to establish his conscientious objector status. As the Army has provided a method by which conscientious objectors may be relieved of combat duty or service in the Army, its regulations must be followed "scrupulously." United States ex rel. Brooks v. Clifford, supra., at 706. See also, Hammond v. Lenfest, 398 F.2d 705, 715 (2nd Cir. 1968).

The findings of fact used to support the denial of petitioners request for discharge are irrelevant to the issue of sincerity and entirely consistent with the beliefs of a conscientious objector. See Kessler v. United States, 406 F.2d 151 (9th Cir. 1969). Because I perceive no basis in fact for denial of the Pomales' claim of conscientious objector status, I respectfully dissent.