Dale E. NACHAND, Petitioner,

v.

Lieutenant General Johnathan O. SEA-
MAN, Commander and General of the
1st Army of the United States, and
Stanley Resor, Secretary of the Army,
Respondents.

Civ. No. 71–283–M.

United States District Court,
D. Maryland.

June 28, 1971.

Searle E. Mitnick and Berenholtz, Kaplan & Heyman, Baltimore, Md., for petitioner.

George Beall, U. S. Atty., and Ransom J. Davis, Asst. U. S. Atty., Baltimore, Md., for respondents.

JAMES R. MILLER, Jr., District Judge.

### Opinion and Order

In this habeas corpus proceeding petitioner, a sergeant in the United States Army, seeks a discharge from the Army as a conscientious objector. The Army, pursuant to Department of Defense Directive No. 1300.6, has issued Army Regulation No. 635–20 (hereafter A.R. 635–20), the latest version thereof being dated July 31, 1970, effective August 15, 1970, which sets forth the policy, criteria, and procedures for disposition of army personnel who, by reason of " * * * deeply held moral, ethical or religious belief * * *," claim conscientious objection to war in any form. In this circuit it is well established that a district court, in entertaining a habeas corpus petition, may review action taken by military authorities which allegedly violates military regulations. United States ex rel. Greenwood v. Resor et al., 439 F.2d 1249 (4th Cir. decided April 12, 1971); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969), reh. denied, 412 F.2d 1137 (1969); Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968).

A.R. 635–20–3a sets forth the policy of the Army to grant a discharge " * * * based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the military." A.R. 635–20–1 establishes the purpose of the regulation as providing for the disposition of claims by military personnel of conscientious objection based upon " * * * deeply held moral, ethical, or religious beliefs."[1] Thus

---

1. The regulation was changed to its present wording to make it compatible with the decision of the Supreme Court in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

the regulation requires that the conscientious objection be (1) bona fide or sincerely held, (2) one based on deeply held moral, ethical or religious beliefs, (3) one developed subsequent to entry in the military service, and (4) an objection to war in any form.

A.R. 635–20–4c requires the Adjutant General, when a request for discharge is denied, to furnish the applicant the reason therefor. The record in this case shows that the reason furnished to Nachand for the denial of his application for discharge as a conscientious objector was that he " * * * lacks the depth of conviction required to qualify for discharge as a conscientious objector."

■ The phrase "depth of conviction" relates to the terms "deeply held" or "deep rooted" when used in connection with military regulations adopted pursuant to D.O.D. 1300.6 concerning applicants for discharge on the basis of conscientious objection. The requirement that beliefs be "deeply held" is different from the requirement of the sincerity or bona fides of the conscientious objection, although similar to it. In the court's opinion, the requirement that the beliefs be "deeply held" means that they must be the product of a conscious thought process resulting in such a conviction of the validity of the beliefs as to give the person holding the beliefs no choice but to act in accordance therewith. The requirement of sincerity, on the other hand, means that the applicant does in truth hold a conscientious objection to war which is "deeply held." The sincerity requirement then is a threshold question *relating to the existence in fact of a belief* and the "deeply held" requirement relates more *to the content or quality of the belief itself*. While the Supreme Court in Welsh v. United States, 398 U.S. 333 at 340, 342 and 344, 90 S.Ct. 1792, 26 L.Ed.2d 308, did not differentiate between "sincerity" and "depth of conviction," this court believes that the last sentence of Mr. Justice Black's majority opinion in *Welsh* justifies the belief that, in the proper case, the Court would recognize the distinction in a Selective Service case. The present case, of course, involves Army Regulations, not the Selective Service Act as such. A.R. 635–20, as previously pointed out, does seem explicitly to distinguish sincerity or "bona fide" (the first of the four tests set out above) from "depth of conviction" (part of the second test).

■ The respondents in this case have not argued, nor did the Conscientious Objector Review Board of the Army or the Adjutant General say, that the views expressed by the petitioner, if sincerely and deeply held, would not qualify under the appropriate tests as the basis for the petitioner's discharge as a conscientious objector. The opinion of the Board, while stating as its conclusion that the petitioner lacked " * * * the depth of conviction required to qualify for discharge as a conscientious objector," went on to say that the " * * * Board conducted an intensive study of the record which revealed * * * a scheme of convenience and delay." The Board then went on to recite the factors which it felt justified its finding of a delaying scheme or tactic by the petitioner. The opinion of the Board fails to distinguish between the two questions of the "sincerity" of the petitioner on the one hand and the "depth of conviction" on the other hand, but the reasons espoused by the Board for its final conclusion make it clear that it felt the petitioner was insincere and was deliberately falsifying for the purposes of delay.

The Army action, therefore, in this case must be measured on the validity of its determination that Nachand did not sincerely embrace views which would otherwise have qualified him for discharge as a conscientious objector under the Department of Defense directive and the Army Regulation.

The record discloses the following essential facts. Nachand, while in his last year at the University of Washington Undergraduate School in 1969, applied to and was accepted by the Peace Corps. While waiting for a position in the

Peace Corps to open, he was drafted in the summer of 1969. In order to change his place of induction from Los Angeles to Seattle, he enlisted in the United States Army on or about July 7, 1969. At that time, he states, his religious beliefs in opposition to war had not crystalized.

Upon his completion of basic training and advanced infantry training, he entered non-commissioned officer's school at Fort Carson, Colorado in September, 1969 for the following three stated reasons:

(1) "I was allowed to avoid thinking about going to war."

(2) "I had more time to think about what I was learning about myself."

(3) "I had time to continue thinking about what I believed and the role a belief should play in my life."

While at Fort Carson, according to petitioner, his religious beliefs in opposition to war in any form began to crystalize. In May, 1970 he received his orders for Vietnam. At that time he went to see an Army chaplain, Major Kirby, at Fort Carson to seek information concerning a discharge from the Army as a conscientious objector. Nachand says that he was told by Major Kirby that he could not apply for such a discharge. Shortly thereafter he went on leave and, according to him, determined that his religious beliefs would not permit him deliberately to take the life of another human nor participate in war or military service in any way giving support to war. Nachand states that in view of his religious beliefs he could not in good conscience obey his orders to report to Oakland, California for shipment to Vietnam. Accordingly, he went AWOL.

On or about December 16, 1970, Nachand turned himself in at Fort George G. Meade, Maryland and instituted procedures designed to lead to his discharge as a conscientious objector. His application included six (6) supporting letters written by relatives and acquaintances between July 7, 1970 and December 15,

1970 in addition to a lengthy statement by him of his religious beliefs in opposition to war in any form and his narration of the process by which he reached those beliefs.

A.R. 635–20–4b(2) requires that an applicant for a discharge as a conscientious objector be examined by a psychiatrist for the purpose of a " * * * psychiatric evaluation indicating the presence or absence of any psychiatric disorder which would warrant treatment or disposition through medical channels to the applicant's commanding officer." On January 7, 1971, Nachand was interviewed by an Army psychiatrist who found that he had no significant psychiatric illness and that he was " * * * cleared for all administrative and judicial action as deemed appropriate by Command."

The same regulation also required that Nachand be interviewed by a chaplain who, after the interview, was required by the regulation to " * * * submit a report of the interview directly to the applicant's commanding officer to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the belief." On December 30, 1970, Captain Schmidt, Assistant Post Chaplain, interviewed Nachand and reported as follows:

"1. I have interviewed E5 Dale E. Nachand, 573–66–7500, in relationship to his conscientious objector views.

"2. SGT Nachand began developing his present views while studying at The University of Washington. Through reading and personal study and research he began believing in a 'Supreme Being' and the practice of non-violence as the preferred way of life.

"3. I believe SGT Nachand is sincerely pursuing his convictions at this time."

As required by A.R. 635–20–4b(3), Nachand was interviewed on January 8, 1971, for approximately two (2) hours by Captain Lawrence R. Ehrhard, a JAG officer. In his report, Captain Ehrhard

quoted at length from Nachand's statements of his religious beliefs and expressed his opinion that the beliefs crystalized after Nachand's receipt of his orders to Vietnam. When seeing a lawyer about the possible jail sentence, according to Captain Ehrhard's report, Nachand was told that he could apply for a discharge as a conscientious objector. Captain Ehrhard's report concludes as follows:

"6. I believe SGT Nachand is sincere in the beliefs which form the basis for the application for discharge as a conscientious objector. Our interview was cordial and frank. SGT Nachand was very open and candid in response to my questions. I detected no evidence of evasiveness or insincerity. His responses, his demeanor, and his conduct supported the honesty of his convictions.

"7. I recommend that SGT Dale Nachand be separated from the service as a conscientious objector."

Pursuant to A.R. 635–20–4b (4) (b) and A.R. 635–20.–4b(5), Captain Frank P. Vitale, petitioner's commanding officer, and Lieutenant Colonel G. E. Morgan, commanding officer of the Special Processing Battalion at Fort Meade, after reviewing Nachand's application on January 29, 1971, noted their agreement that Nachand was sincere in his convictions and beliefs. Both recommended approval of his application for discharge as a conscientious objector.

On February 10, 1971, Captain R. M. Webb, on behalf of the commanding officer of Fort George G. Meade, recommended approval of Nachand's request for discharge as a conscientious objector.

■ The scope of judicial review is limited to determining whether the record discloses a basis in fact for holding that Nachand is not sincere in the beliefs upon which he bases his claim as a conscientious objector. United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), quoting Estep v. United States, 327 U.S. 114, 66 S.

Ct. 423, 90 L.Ed. 567 (1946); United States ex rel. Greenwood v. Resor et al., supra; United States ex rel. Brooks v. Clifford, supra. The "basis in fact" standard has been said to be the narrowest range of review known to the law. Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957). However, even where the applicant has appeared personally before the board which has the responsibility of making a determination of whether or not a valid basis exists for a claim of conscientious objection and the board thereby has had the opportunity to weigh the credibility and demeanor of the applicant, the courts, in applying the "basis in fact" test, have refused to let stand decisions in which the board has dismissed the claim solely on the basis of suspicion and speculation and in the face of uncontroverted evidence supporting the claim. Dickinson v. United States, 346 U.S. 389, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). There must be a "rational" basis in fact for the decision of the board, not merely speculative possibilities. United States v. James, 417 F.2d 826 (4th Cir. 1969).

■ Whatever may be the law elsewhere, in this circuit a unanimous determination by the army officers, who have had personal contacts with the applicant and who make reports under A.R. 635–20, that the applicant is sincere in his beliefs automatically negates any basis in fact for a contrary opinion by a review board (not having the applicant personally before it) unless there are other statements of the applicant himself in the record or other facts in the record which point directly to such a conclusion. United States of America ex rel. Greenwood, supra; United States ex rel. Tobias v. Laird, supra; United States ex rel. Brooks v. Clifford, supra, 409 F.2d at 707; Keil v. Seaman, 314 F. Supp. 816 (D.Md.1970); Osborne v. Seaman, 318 F.Supp. 41 (D.Md.1970); Grossman v. Fallwell, 3 SSLR 3977 (D. Md.1969); Donigian v. Laird, 308 F. Supp. 449, 456 (D.Md.1969); Talford v.

Seaman, 306 F.Supp. 941 (D.Md.1969); Reitemeyer v. McCrea, 302 F.Supp. 1210 (D.Md.1969); Cooper v. Barker, *supra*.

■ The opinion of the Conscientious Objector Review Board shows that the Board based its finding of lack of sincerity on the part of Nachand on what it found to be his "* * * scheme of convenience and delay" to avoid having to comply with his reassignment orders to Vietnam "* * * until such time as he has less than six (6) months of active duty service remaining because at such time it is no longer economically feasible and it is against Army policy to ship a man to the Republic of Vietnam." The Board points to the fact that Nachand went through basic training, advanced infantry training, and then accepted appointment to non-commissioner officers school at Fort Carson, Colorado without at that time counselling with anyone in the Army concerning his feelings or beliefs on war. The Board felt that his educational background must have made it apparent to him that his service in the Army would possibly require him to kill and that his acceptance of non-commissioned officers school, when viewed in the context of the reasons for acceptance that he gave in his statement, amounted to a delaying technique. The Board further pointed to the fact that he did not call his views to anyone's attention until he received his orders for reassignment to Vietnam in mid-May. The Board appears to have believed that the failure of Nachand to file his application for discharge as a conscientious objector until January, 1971 was a part of his scheme of delay. In addition the Board gave short shrift to Nachand's explanation that he did not know that he could file for conscientious objector status after his conversation with the chaplain, Major Kirby. As a further indication of the scheme for delay and of the insincerity of Nachand the Board points to the fact that he went AWOL and then turned up a number of months later at Fort Meade on the east coast of the United States, approximately three thousand (3,000) miles from the place to which he had been ordered to report and approximately the same distance from the State of Washington to which he had gone on his leave. The court is of the view that while the pattern pointed out by the Board would certainly justify it in being suspicious of the sincerity of the belief of Nachand, the matters pointed out by the Board are in the realm of speculation and suspicion condemned by Dickinson v. United States, *supra*, and United States v. James, *supra*, rather than themselves forming a basis in fact for the decision of the Board.

The most damning evidence against Nachand, it appears to the court, was not cited by the Board as one of its reasons for reaching the conclusion which it did. Three of the letters which were submitted by Nachand with his application are dated July 7, 1970, July 31, 1970, and August 17, 1970, being the letters of Gordon W. Millikan, H. A. Bradbury, and John A. Gorgenson, respectively. Gorgenson's letter of August 17, 1970 specifically states that Nachand "is attempting to legally establish his status as a conscientious objector." It is implicit in Millikan's letter and Bradbury's letter as well, although not as specifically stated, that Nachand was having the letters written in connection with a claim that he was a conscientious objector. Therefore, it is apparent that, at least as of August 17, 1970, Nachand was aware of his opportunity to apply for conscientious objector status, irrespective of his previous conversation in mid-May with Major Kirby. Yet he did not arrive at Fort Meade until December, 1970. Captain Ehrhard, in his report, stated that Nachand learned that he could apply for a conscientious objector discharge from a lawyer whom he went to see about his possible jail sentence for being AWOL. The aforesaid letters would indicate that, if Nachand's statement to Captain Ehrhard is true, Nachand saw the lawyer prior to August 17, 1970 at the latest. There was then a minimum delay of four (4) months by Nachand between the time he learned he

could apply for a conscientious objector discharge and the time when he reported to Fort Meade, after which there was a period of approximately one month until January 15, 1971 when he filed the formal application for discharge.

 An inference could be drawn from this evidence that the purpose of Nachand was, in fact, to delay for reasons of his own, possibly in the hope that the Vietnam war would cease or wind down to the point where his participation in combat would not be required. Where a rational inference could be drawn from the evidence to sustain the Board, there is a basis in fact for the Board's decision even though some other inference or inferences could just as rationally be drawn therefrom. United States v. Pritchard, 413 F.2d 663, 666 (4th Cir. 1969). Here, however, the Board did not itself draw any inferences from the dates of the letters nor, apparently, did the Board even consider them. Although it is not necessary for the Board's opinion to have recited every fact which supported its decision, Gruca v. Secretary of Army, 436 F.2d 239, 243–245 (D.C.Cir. 1970), there must be at least some coherent and rational basis outlined in the opinion to sustain the decision. In this case, the Board's opinion relied instead on speculative possibilities or inferences from facts not strong enough to overcome the prima facie case presented by the applicant's statements and the reports of the interviewing officers. The court has been advised that the petitioner has been punished by the Army for his AWOL episode and the court does not by this decision in any way imply that it condones or approves the actions of Nachand for his flaunting of Army regulations. Such action by him, however, is not in itself ground for denying an otherwise meritorious petition, at least where he has already completed his punishment. Cf. Cooper v. Barker, *supra*.

Whatever might be the outcome of this close case elsewhere, the court believes that the prior decisions of the Fourth Circuit cited herein require that the writ be issued.

Accordingly, it is this 28th day of June, 1971, Ordered:

1. That the petition for a writ of habeas corpus be and it is hereby granted provided that the effective date of the writ shall be stayed for two weeks from this date to allow respondents time to discharge petitioner under appropriate regulations; if the respondents do not choose to do so, the writ will issue forthwith.

2. The Clerk is directed to mail two copies of this opinion and order to Searle E. Mitnick, Esq., attorney for the petitioner, and two copies to the United States Attorney.